[Crim. No. 601. In Bank.—April 30, 1900.]

Ex parte HENRY LORENZEN, on Habeas Corpus.

Municipal Corporations—Validity of Ordinance Regulating Street-car Transfers — Constitutional Law. — A municipal ordinance regulating the issuance and delivery of street-car transfers, requiring them to be issued and delivered within the street-car from which the transfer is made, and received only within the car to which it is made, and forbidding any person, except the conductor or agent of the street-car line, to give, sell, or issue any transfer check or ticket issued for passage on any street-car or line, does not violate the constitutional guaranties protecting personal liberty or the right of private property, and is not arbitrary, oppressive, or unreasonable, nor an illegal attempt to enforce the obligations of private contracts by penal legislation, but, properly interpreted, is a valid exercise of

powers expressly granted to the municipal authorities. [Van Dyke, J., and Garoutte, J., dissenting.]

Id.—Object of Ordinance—Welfare of Traveling Public—Continuance of Transfer System—Correction of Abuse—Fraudulent Violation of Contract.—The primary object of the ordinance is not to compel the passengers not to violate their contracts, but to protect and advance the convenience and welfare of the traveling public by continuing a transfer system, the abuse of which needed correction, and, if not corrected by reasonable regulations, might have resulted in the discontinuance of the system, to the material injury of the community. As an incident to reasonable regulations thus promoting the welfare of the traveling public, it is no objection that the ordinance makes penal what was before an illegal act and against good morals, consisting in the violation of an express contract, and the resulting consummation of a fraud upon the street-car company.

Id.—General Terms of Ordinance—Reasonable Construction.—The general terms of the ordinance forbidding the giving away of an issued transfer check to any other person are to be reasonably and equitably construed, as not intended to forbid the delivery to several persons of checks issued expressly for them by the conductor to the one paying the fare for them, or the passing up of a transfer to a conductor by the agency of another passenger on the car, or any other innocent or lawful use of the transfer check. It will always be presumed that the legislature intended exceptions to its language which would avoid an absurd or manifestly unjust consequence, and that the law was only intended to apply according to its spirit to a forbidden act, in its nature illegal or fraudulent.

HABEAS CORPUS to determine the validity of an ordinance of the City and County of San Francisco, of a violation of which the petitioner was convicted in the Police Court. A. B. Treadwell, Judge.

The facts are stated in the opinion of the court.

James G. Maguire, and Frederick McGregor, for Petitioner.

The ordinance is an arbitrary restraint upon the personal liberty and property rights of the citizen. (Const., art. I, sec. 1; Civ. Code, secs. 655, 659, 679; *Ex parte Kuback,* 85 Cal. 274; 20 Am. St. Rep. 226; *Ex parte Whitwell,* 98 Cal. 73; 35 Am. St. Rep. 152; *In re Wong Hane,* 108 Cal. 682; 49 Am. St. Rep. 138.) Doubts on these points are to be resolved in favor of the citizen. (*Logan v. Pyne,* 43 Iowa, 524; 22 Am. Rep. 261; *Merriam v. Moody,* 25 Iowa, 164; *State v. Smith,* 31 Iowa, 493;

*Minturn v. Larue,* 23 How. 437; *Chicago v. Rumpff,* 45 Ill. 90; 92 Am. Dec. 196.) The ordinance by its terms is unreasonable, oppressive, and void, in making criminal innocent acts. (*People v. Gillson,* 109 N. Y. 401; 4 Am. St. Rep. 465; *Toledo etc. Ry. v. Jacksonville,* 67 Ill. 40; *Lake View v. Rose Hill Cemetery Co.,* 70 Ill. 195; 22 Am. Rep. 71; *In re Jacobs,* 98 N. Y. 107; 50 Am. Rep. 636; *Milliken v. City Council,* 54 Tex. 388; 38 Am. Rep. 629; *State v. Mott,* 61 Md. 105.) The ordinance is an unauthorized attempt to enforce the obligations of private civil contracts by penal legislation. ' (*Newport v. Newport etc. Co.,* 90 Ky. 193.)

Frank Kelly, and F. P. Dunne, for I. F. Lees, Respondent.

The legislative intent is to prevent the fraudulent use of transfers. The ordinance is not to be construed so that the general term "person" shall be extended to every imaginable instance of the innocent use of a transfer check which may fall within the letter of the ordinance, contrary to its manifest spirit and intent. (*United States v. Kirby,* 7 Wall. 482; *Rutledge v. Crawford,* 91 Cal. 533; 25 Am. St. Rep. 212; *Brewer v. Blougher,* 14 Pet. 178, 198; *Donnell v. State,* 2 Ind. 658; *State v. Clark,* 29 N. J. L. 96, 99; *Holmes v. Paris,* 75 Me. 561; *Smith v. People,* 47 N. Y. 330, 336, 337; *Russell v. Farquhar,* 55 Tex. 355; *People v. West,* 106 N. Y. 297; 60 Am. Rep. 452.) There is no incompatibility between the same act being a breach of contract and a crime. (*In re Debs,* 158 U. S. 565, 594.) There is no invasion of any right of liberty or property, considering the nature and purpose of the transfer. (*Hibbard v. New York etc. R. R. Co.,* 15 N. Y. 466; *People v. West, supra.*)

HENSHAW, J.—The petitioner was convicted of the violation of a penal ordinance in the city and county of San Francisco. He sued out this writ of *habeas corpus,* alleging that the ordinance under which he was convicted and sentenced is void. The ordinance in question is as follows:

"Order No. 2992.

"Providing regulations in the operation of street railroads and prohibiting the issuance or delivery of transfers to passengers except upon or within the car from which the passenger is transferred.

"The people of the city and county of San Francisco do ordain as follows:

"1. Every person, firm, and corporation operating street-cars within the city and county of San Francisco that issue transfers to passengers to enable them to transfer to other cars operated by the same or different owner, shall issue and deliver said transfers upon or within the car from which the passenger is transferred, and not elsewhere.

"2. Every person, firm, and corporation operating street-cars within the city and county of San Francisco that receives transfers as fare from passengers shall take said transfers from the passengers who received the same within or upon the car to which the passengers are transferred, and not elsewhere.

"3. No person, except a duly authorized conductor or agent of a person, firm, or corporation operating a line of street railroad within the city and county of San Francisco, shall within said city and county issue, deliver, give, or sell, or offer to issue, deliver, give, or sell, to any other person whatsoever, any transfer, transfer check, or ticket, issued or purporting to be issued by such person, firm, or corporation so operating such line of street railroad, for passage on any street railroad car or line.

"4. Every person, firm, or corporation violating the provisions of this order shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

Lorenzen was charged with having given and disposed of a transfer in violation of section 3 of the ordinance.

Against the validity of this ordinance it is urged that it violates the guaranty of personal liberty contained in the constitution of the United States and of the state of California (U. S. Const., amend. XIV, sec. 1; Const., art. I, sec. 1); that it is an unconstitutional interference with a right of private property; that it is arbitrary, oppressive, and unreasonable; and, finally, that it is an illegal attempt to enforce the obligations or assumed obligations of private civil contracts by penal legislation.

As to the nature of the "transfer," it is well recognized and admitted that the street railroads of the city and county of San

Francisco have provided that passengers upon their cars who
have paid the usual fare may receive transfers entitling them
to leave the car at a certain designated point, and there within
a limited time and without further payment of fare, but upon
presentation and delivery of the transfer check, pursue their
travels upon the connecting line. It is, then, a part of the
passenger's contract with the company that he may thus trans-
fer to and ride upon the connecting road. As conditions of
this privilege, it is further a part of the contract that the passen-
ger shall board the cars of the connecting line at a designated
point, and within a time limit after the issuance to him of the
transfer indicated by a punch mark upon its face, and that the
transfer shall not be transferable or assignable to another, but,
if used at all, shall be used by the person to whom it is issued.
The paper slip or ticket designated a transfer, when in the hands
of the passenger, thus serves a twofold purpose: 1. To the pas-
senger as an evidence of his contract by which he is entitled to
continue his journey upon the connecting road; and 2. To the
company as a means of identification afforded to its conductors
and servants by which they may know that the passenger pre-
senting the transfer is entitled to ride without further payment
of fare.

Such being the nature of the contract between the company
and its passenger, consideration may be paid to the objections
raised against the validity of this ordinance. The power of the
general legislature acting within constitutional limitations to
make penal an act theretofore indifferent, or even innocent, may
not be doubted. (*People v. West*, 106 N. Y. 293; 60 Am. Rep.
452.) This, however, is not a statute of the general legislature,
but a municipal by-law, and while it is true that article XI, sec-
tion 11, of the constitution of this state expressly confers upon a
city the power to make and enforce within its limits "all such
local, police, sanitary, and other regulations as are not in con-
flict with general laws," this language is not to be construed as
enlarging the powers which municipalities theretofore enjoyed
in these respects; but it is merely an express grant of a power
which formerly they possessed by implication. (*People v. Wilt-
shire*, 96 Cal. 607.) The ordinance in question, then, is to be
scanned and judged like any other municipal ordinance. So

judging it, regard is to be had to the end sought to be accomplished—whether that end be a reasonable one, and one within the powers of the municipality to accomplish; and regard is also to be had to the question whether the mode adopted to accomplish the end is itself reasonable or unreasonable.

Street-car companies are public utilities, which are almost necessities to our present mode of life. While in one aspect their ownership is private, and they are operated for private gain, in another they are servants of the people, and the law-making powers reserve and freely exercise the right to regulate and control them in their operations. It is upon the theory, and only upon the theory, that they may be operated for the public good that a franchise permitting their existence may be given; and the power to pass reasonable regulations for their operation and management is expressly granted by section 503 of our Civil Code. It is strictly within the power of the municipal authorities of the city, and properly within the exercise of their duties, to pass any reasonable regulations affecting street-car lines, to remedy a threatened or actual interference with the comfort, convenience, and general welfare of the traveling public. It is urged against this ordinance that it is an attempt by penal legislation to enforce a private civil contract; in other words, that it is an attempt to compel the passenger who has received his transfer to use it within the limits of his contract, and not to violate that contract by giving it to a person who may make improper use of it. Could it be perceived that this was the only purpose, or even the main purpose, of the ordinance in question, we should be inclined to hold that the objection was fatal; but we cannot perceive that its main object or design was to accomplish this result. Rather, we think it clear that its primary object is to protect and advance the convenience and welfare of the traveling public. For if to the legislative mind an abuse of the transfer system has grown up, the inevitable result of such unrestricted abuse must be one of two things—either that transfers would be discontinued entirely, to the material injury of the community, or the transfer system would be hedged and safe-guarded by onerous conditions and requirements for the protection of the company, which would work great inconvenience to the passengers. It was certainly right for the supervisors, if

they saw or anticipated the existence of such an evil, to destroy or avert it by proper legislation tending to correct the abuse, and it is no objection to the validity of an ordinance designed for this purpose that it may incidentally tend to prevent frauds and compel men honestly to abide by their contracts. It is concluded, therefore, upon this point that the purpose of the legislation, to promote the convenience and welfare of the traveling public in regulating the business of the street-car companies of San Francisco in their dealings with their passengers, is legitimate and within the scope of the powers expressly granted to the municipal authorities.

But are the means adopted to accomplish this end unreasonable or oppressive, or in violation of any constitutional rights of the citizen? It is here first insisted by petitioner that the transfer issued to him by the company is his property, and that an essential and inalienable right to the enjoyment of property is the right to sell, give it away, or otherwise dispose of it. This, however, is but partially true. A man may not be deprived of his property or of his property rights for any private considerations whatever, nor for considerations of public good, without compensation first made; but the legislature has the unquestioned right, and every day exercises it, of restricting the use to which private property may be put. As is said in *Burdick v. People,* 149 Ill. 600, 41 Am. St. Rep. 329: "The franchises of railroads acting under charters or acts of incorporation are of a public nature so far as the safety, convenience, and comfort of passengers are concerned. The reasonable regulations affecting the conduct of such public employments are fit subjects for legislative action. The law-making power may provide means for remedying such evils as in its opinion may exist in the management of these public agencies of transportation, and in doing so it may sometimes impose restrictions which are deemed to be necessary upon the use and enjoyment of property. A man is not deprived of his property unless it is taken away from him so that he is divested of his title and possession. To limit the use and enjoyment of property by legislative action is not to take it away from the owner, when the property whose use and enjoyment are so limited is invested in a business affected with a public use, or used as an accessory in carrying on such busi-

ness." But, aside from this, in the case of this ordinance it cannot be perceived that its terms limit or circumscribe any of the just and legal rights which a passenger receiving a transfer theretofore enjoyed. In receiving it he took it under the conditions above set forth. It was a part of his contract that, if used, he alone would use it, and if he sold it or assigned it, or gave it to another, to the end that that other might use it, he clearly violated his contract, and put a fraud upon the company. A court will not hear with much patience one insisting upon his right to violate his contract and consummate a fraud. The ordinance in question, therefore, so far as the passenger is concerned, leaves him all the rights which theretofore he enjoyed under his contract, and interferes in no way with any legal or legitimate use which at any time he could have made of the transfer. At the most, so far as he is concerned, it has but made penal what before was illegal and against good morals.

Finally, *it is urged against* the ordinance that by the generality of its terms it is unreasonable and oppressive; that every person who, taking a transfer, shall hand it to anyone other than the person authorized to receive it, no matter how innocent the act may have been in fact or intent, is guilty of a misdemeanor. In illustration of the position it is said that if the conductor should give to the father traveling with his family three or four transfers, and he in turn should hand them over to his wife and children, he would at once become amenable to the ordinance; that so, too, would be the passenger who handed his transfer to another upon the car to be delivered to the conductor; so, too, would the witness in court who gave the transfer to the judge for inspection, or the judge who in turn might deliver it to the clerk. To some of the objections thus presented answer may be made that the life of the transfer ends with the passage of the time indicated upon its face. It ceases then to be a transfer, to have any value at all other than that which may attach to it as a bit of paper. But for the more substantial objection that the ordinance by its terms would oppress and lead to the conviction of persons guilty of no fraudulent act, it is to be remembered that the letter of a penal statute is not of controlling force, and that the courts, in construing such statutes, from very ancient times have sought for the essence and spirit of the law and de-

cided in accordance with them, even against express language; and in so doing they have not found it necessary to overthrow the law, but have made it applicable to the class of persons or the kind of acts clearly contemplated within its scope. The rule was thus early expressed in Bacon's Abridgment: "A statute ought sometimes to have such an equitable construction as is contrary to the letter." The oft-cited instance of the Bologna law, which enacted that whoever drew blood in the streets should be punished with the utmost severity, was wisely held not to apply to the barber who opened the veins of a sick man to aid in his cure. The statute of Edward II, declaring guilty of a felony any person who broke prison, was held upon considerations of the most ordinary common sense not to apply to one who did so to escape from a burning jail. The law declaring it a felony to lay hands upon a priest, by the same principles of common sense reasoning, was held not to apply to one who did so by way of kindness or warning, but only to those who acted with illegal or improper intent. In *United States v. Kirby*, 7 Wall. 482, the act provided: "That if any persons shall knowingly and willfully obstruct or retard the passage of the mail, or of any driver or carrier, etc., . . . . for every such offense shall pay a fine not exceeding one thousand dollars." A mail carrier was arrested by a state officer on an indictment for murder. The act came within the letter of the law. Mr. Justice Field, delivering the opinion of the court, discusses the exemption of mail carriers from detention under civil process, but declares that they are liable to arrest and detention under criminal process for acts *malum in se*. Therefore, notwithstanding the fact the defendant had "knowingly and willfully" retarded the mail carrier, it is said: "When the acts which create the obstruction are in themselves unlawful, the intention to obstruct will be imputed to their author, although the attainment of other ends may have been the primary object. The statute has no reference to acts lawful in themselves, from the execution of which a temporary delay to the mail unavoidably follows. . . . . All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended ex-

ceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." In *Donnell v. State*, 2 Ind. 658, a statute prohibiting the retailing of spirituous liquors without license contained no exception in favor of a druggist selling for medicinal purposes. A druggist who had so sold liquor was discharged after conviction as being clearly excepted from the intent, though not the letter, of the law. In *State v. Clark*, 29 N. J. L. 96, the statute made it a misdemeanor for anyone to willfully open, break down, injure, or destroy any fence. It was held not to apply to the destruction of a fence by one who was in its lawful possession, and it is said that the literal import of the terms and phrases implied will be controlled by the objects which the act was designed to reach. In *Holmes v. Paris*, 75 Me. 559, it is said: "It has been repeatedly asserted in both ancient and modern cases that judges may in some cases decide upon a statute even in direct contravention of its terms." In all of these cases the apparent defect of the statute is cured by making it apply according to its spirit to the act in its nature illegal or fraudulent. So here, notwithstanding the generality of the language, no lawful or innocent use of the transfer would subject the passenger to the penalties of the ordinance.

It is concluded, therefore, that the ordinance is valid and the prisoner is remanded.

Temple, J., McFarland, J., and Beatty, C. J., concurred.

Van Dyke, J., dissented.

GAROUTTE, J., dissenting.—I agree with a great many of the views expressed by Mr. Justice Henshaw, but must dissent from the conclusion declared, and from his construction of the ordinance, as evidenced by the language in the closing portion of his opinion, to wit: "In all of these cases the apparent defect of the statute is cured by making it apply according to its spirit to the act in its nature illegal or fraudulent. So here, notwithstanding the generality of the language, no lawful or innocent use of the transfer would subject the passenger to the penalties of the ordinance." Stripped of immaterial matters, the ordinance declares all persons guilty of a misdemeanor, other than

some agent of the company, who "should deliver, give, or sell, or offer to deliver, give, or sell, to any other person whatsoever a transfer." Now, the opinion says no innocent or lawful use of the transfer by the passenger would make him guilty of a misdemeanor. In other words, as construed by the opinion, the ordinance reads that any passenger "who gives away or sells a transfer, with intent that it shall be used by some other party, is guilty of a misdemeanor." An ordinance so framed appears to me to be perfectly valid, but this court has no right to frame such an ordinance, even by construction. An ordinance of that kind would be entirely dissimilar to the one passed by the board of supervisors. In such an ordinance this particular intent becomes the very heart of the act, overshadowing everything else. How can this court say that the law-making body passed any such an ordinance? How can this court even say that such body intended to pass that kind of an ordinance? We only know what the intention of the board of supervisors was from what it did, and this court can only measure and test this act by what it says.

According to the main opinion a complaint against a passenger worded in the language of this ordinance would not charge an offense. For, as there said, a passenger might do all the things forbidden and still be innocent. It thus appears that a complaint sufficient to sustain a cause of action must go beyond anything found in the ordinance, and allege that the passenger sold or gave away the transfer "with intent that it should be used by another person." There being no authority in the ordinance itself which justifies the pleader in inserting these words, he clearly has no right to do so.

The opinion relies upon various decisions to support this liberal construction of the statute, notably an ancient and somewhat celebrated case which arose under the law of Bologna, a law which read that "whoever drew blood in the streets should be punished with the utmost severity"; and it was there held that this law did not apply to the surgeon who in his professional capacity bled a sick man in the streets. I find no fault with the decision of that case to the end that the surgeon was not guilty, but do dissent from the implication found in the opinion here, that certain classes of persons could be legally convicted of

violating a law so worded if found on our statute books. The indefiniteness of the penalty is only a fair illustration of the indefiniteness of the entire act. A law so worded is beyond all salvation by construction, and that case is not valuable as an authority here. For many reasons I am quite clear that such a law in these times would not stand the test of judicial scrutiny for a second. To support the validity of a law of that kind at the present time by construction would partake rather of the character of Solomonic justice, as administered by that great king in the celebrated trial of the title to the baby. I am curious to know what decision would have been rendered by the Bologna court if some public spirited citizen, similar to those we have in these days, for the purpose of testing this law, had drawn blood in great quantities in the street by slashing the throat of a goat or an ox. If a question similar in principle to the one here presented came before the Cadi, who sits daily upon his mat in front of the opening of his tent, administering justice under the soothing fumes of his hookah, from whose decisions there is no appeal, and who acts as judge, jury, and attorney, untrammeled by legislatures and constitutions, I have no doubt but that he would enforce the ordinance, promptly declare the prisoner guilty and probably affix the penalty at a fine of five goats and a heifer, and do it all within a few minutes. For he administers justice on very general principles, and makes the law fit the case. But the practice and procedure is different in this country. In the days when the Bologna case was decided, in that and similar jurisdictions, such a thing as the invalidity of a law was not known. The power that made the law was supreme. Every law was a constitution unto itself, and woe betide the judge who would have the temerity to set it aside. His probable fate would be to be "punished with the utmost severity." Things in these days and in this country are not as they were in those days and in those countries.

The Indiana case cited in the opinion as to the selling of liquor is opposed to the later case of *Commonwealth v. Kimball*, 24 Pick. 370, where Chief Justice Shaw says: "If the law is more restrictive in its present form than the legislature intended, it must be regulated by legislative action." I fully indorse the doctrine of *United States v. Kirby*, 7 Wall. 482, as to the stop-

page of the United States mails. The court there said: "The statute of Congress by its terms applies only to persons who 'knowingly and willfully' obstruct and retard the passage of the mail or its carrier; that is, to those who know that the acts performed will have that effect, and perform them with the intention that such shall be their operation." I find nothing in that case supporting the construction given the ordinance in this case. And I venture to say that no case can be found where by judicial construction a specific particular intent has been placed in a statute.

If by construction you may inject the words into this ordinance, "with intent that it shall be used," then it seems that the legislature has enacted a vast mass of useless legislation; for by the language of a hundred different sections of the Penal Code various acts are declared to be either felonies or misdemeanors, when done with a certain particular intent. If the certain intent may be supplied by construction, it was idle to insert in it these various sections. For example, section 356 of the Penal Code reads: "Every person who cuts out, alters, or defaces any mark upon any log, lumber, or wood, or puts a false mark thereon, with intent to prevent the owner from discovering its identity, is guilty of a misdemeanor." In the absence of a particular intent in this statute would the court legislate a certain intent into it? How would a court know what intent to insert? Naturally I should have supposed the intent to be inserted in this statute would have been an intent to appropriate the "log, lumber, or wood." Yet not so, for the intent named is an intent "to prevent the owner from discovering its identity." It is thus plain that a court cannot do these things, for the reason, among many reasons, that it does not, and cannot, know what intent the legislature had in mind.