319 P.2d 103]

[Crim. No. 3354.   First Dist., Div. One.   Dec. 10, 1957.]

THE PEOPLE, Respondent, v. GILBERT FRANCIS et al.,
Appellants.

Benjamin M. Davis and Lionel Browne for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BRAY, J.—Defendants appeal from a conviction of violation of Penal Code, section 211 (robbery), and of being armed with a deadly weapon, and from the order denying new trial.

## QUESTIONS RAISED

1. Admission of alleged accusatory statements.

2. Alleged error in admission of evidence, refusal of offer of proof and denial of cross-examination.

3. Instructions.

## EVIDENCE

Ward Saunders, store manager of Super X Market in San Francisco, testified that about 8:20 p. m. August 24, 1956, two men entered the store, one going to the liquor department. Saunders asked him if he could be of help and the man replied "No." Saunders started to approach the second man who was standing at the checking stand and then noticed that the latter was holding a gun on the cashier, Elinor Retter. The first man (later identified by Saunders as *Richard* Francis—defendants are brothers) then stuck a gun in Saunders' ribs and told him to take a paper bag and empty the cash registers into it. Richard, facing Saunders and still holding the gun, demanded Saunders' wallet. Saunders fainted. Mrs. Retter testified that she did not see the two men enter the store. She was first aware of a holdup when she was approached by a man whom she later identified as Gilbert Francis. He said "This is a holdup." She replied "Are you kidding?" Thereupon he produced a revolver, pointed it at her and told her to put all the currency and half dollars in a bag. When she handed him the money she watched him very closely to get a good description of him. She also noticed the other "boy" but did not see his face. She noticed Saunders putting money into a bag. Richard told him to hurry. Gilbert said "Rico, hurry up, he's going to have a heart attack. Let's get out of here." Saunders at a police lineup identified Richard but was unable to identify Gilbert. Mrs. Retter at a lineup

identified Gilbert but was not able to identify Richard positively, although by his tone of voice, back of his head and side he looked familiar to her. Saunders said the gun pointed by Gilbert at Mrs. Retter was a black one. She said it was a "steel-gray" color.

Richard did not testify. Gilbert did, claiming that he was at his own home at the time the robbery took place. Gilbert denied that he ever called his brother "Rico" prior to his arrest but admitted doing so once or twice since.

1. *Statements.*

Police Inspector Zimmerlin testified to a conversation with Richard, in the presence of an assistant district attorney and another inspector. When asked about his whereabouts the night of the robbery Richard stated that he arrived home from work between 4 and 5 p. m. He listened to the fights on the radio, then he and his wife Nancy went to a Mission Street restaurant two or three doors away. While having dinner, Gilbert entered and joined them. On leaving the restaurant, Richard and Nancy went to Richard's mother's home, where they remained for some time visiting his sister. Later he and his wife returned to their home.

Later the same night that the conversation testified to by Zimmerlin took place, the officers talked to Gilbert. He said that the early part of the night in question he was home watching the fights on television. About 10 p. m. he went down town to pick up his wife. They went to a drive-in for food and then home. He did not see Richard or Nancy after he watched the fights.

Zimmerlin later talked to Nancy and then had another talk with Richard. Zimmerlin told Richard that he had talked to Nancy and to Gilbert; that Gilbert had stated that he had not seen Richard any time following the fights, and that Nancy had said that Richard had not listened to the fights, that she had dinner with Richard and Gilbert, but that following the dinner Richard and Gilbert left her and she went home alone; that she went to Richard's mother's house, leaving a note for Richard at home. Zimmerlin said that as a result, the police had concluded that Richard's earlier statement was false.

After hearing Zimmerlin's statement of what he claimed Gilbert and Nancy had said, Richard stated, "Well, I know that isn't so but I can't tell you what happened . . . I'll fight it out in court." Richard said several times that he was in a position which prevented him from telling what happened that night. Zimmerlin testified that in all conversations both

defendants denied committing the robbery. Defendants objected to the admission of Zimmerlin's testimony concerning what he had told Richard that Gilbert and Nancy had said.

The court limited the statements of Gilbert to Zimmerlin to Gilbert's case alone. It also ruled that Nancy's statement could not be considered against Gilbert. However, it ruled that both Gilbert's and Nancy's statements could be admitted as against Richard, not for the purpose of proving the conversation between Nancy and the inspector or the truth of the statements therein contained, but only to show the conversation between the inspector and Richard.

So far as defendant Gilbert is concerned, there could have been no prejudice in the admission of his statement to Zimmerlin as later in the case Gilbert testified to the same effect except that he claimed that he said that he could not remember whether or not he had seen Richard and Nancy that night. Inspector Zimmerlin's testimony to the effect that Gilbert had told him he did not see either one would have been admissible later by way of impeachment. As to Nancy's statements the court ruled that they were not admissible against Gilbert.

This brings us to the question of the admissibility against Richard of these statements. Respondent concedes that these statements were not accusatory statements within the rule of *People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18], but contends that they showed that Richard admitted falsifying his original story and that they were admissible under the rule of *People* v. *Cole,* 141 Cal. 88, 90 [74 P. 547], that ''Deception, falsehood, and fabrication as to the facts of the case are treated as tending to show consciousness of guilt, and are admissible on the same theory as flight and concealment of the person when charged with crime.'' (See also *People* v. *Walker,* 99 Cal.App. 2d 238, 243 [221 P.2d 287] ; *People* v. *Tolson,* 109 Cal.App.2d 579, 581 [241 P.2d 32].) The statements referred to in the Cole and the other cases above cited were statements of *the defendant* which showed falsehood, not hearsay statements of other persons. In fact, in the Cole case, the court pointed out (p. 92) that on a proper motion all the hearsay statements would have been ruled out. Zimmerlin properly testified that Richard told him that he lied in the story defendant had previously told the officer. But the statements of Gilbert and Nancy were completely hearsay as to Richard and were not admissible. The above cases are not authority for the admission of third party statements. The only exception to the hearsay rule is in the case of accusatory statements which

these concededly were not. Additionally, as to the statements attributed to Nancy—Nancy could not have testified to their substance at the trial, because of the privilege provided by section 1322, Penal Code, and under no circumstances should they have been admitted.

In view of the positive identification of Gilbert by Mrs. Retter, and by Saunders of Richard, the use of the name ''Rico'' at the holdup, Richard's admission that he had falsified his alibi and all of the circumstances of the case, there can be no doubt as to his guilt, and that the jury could not have arrived at any other conclusion. Therefore, under section 4½ of article VI of the Constitution, the error was not such as to require a reversal of the judgment. Our ruling on this subject fully answers defendants' contention that the prosecuting attorney was guilty of misconduct in offering Zimmerlin's testimony.

2. *Alleged Error As to Evidence.*

█ Mrs. Retter testified that at the lineup Richard was required to repeat the words used at the holdup ''This is a stickup'' and that the tone of his voice was similar to that of the person who there used the words. Defendant Richard contends that his constitutional right against self-incrimination (Cal. Const., art. I, § 13) was violated by this requirement. Inasmuch as no objection was raised at any time to the introduction of this evidence we deem it unnecessary to determine this question. ''It is a general rule of appellate review, early established and long adhered to, that questions not raised in the trial court will not be considered on appeal.'' (3 Cal.Jur.2d § 140, p. 604; see cases cited there and in 1957 Supp. for vol. 3, p. 50.)

█ On cross-examination of Zimmerlin a picture of the lineup portraying the men who participated was produced and Zimmerlin was asked if a certain one of the men was dismissed from any robbery charge. The court sustained plaintiff's objection. The court then denied defendants' request to make an offer of proof. We see no error in this action, first, because there was no request that the offer be made out of the presence of the jury, and secondly, because we can think of no circumstances and none have been called to our attention, under which evidence of what happened to one of the men in the lineup as a result of some other robbery could possibly have been admissible.

█ Defendant Richard complains of the sustaining of objections to the following questions asked by defendants in

cross-examination of Inspector Zimmerlin: Whether at the time Zimmerlin talked to Richard, the latter had an attorney, was advised by Zimmerlin of his constitutional rights, was told that his statement would be used in court, or was booked to have no visitors without Zimmerlin's first seeing them. We know of no requirement that before taking a statement from a defendant in custody the police officer must advise him of his constitutional rights or that his statement might be used in court. Therefore, while that information as well as the fact that defendant then had no attorney might very well have been admitted for the jury's information, we see no prejudice in the court's ruling. The manner of booking Richard was not material and therefore the court ruled properly.

### 3. *Instructions.*

■ The court gave an accusatory instruction similar to CALJIC Number 30, stating that if the jury found that "Defendant, under conditions which fairly afforded him an opportunity to reply, failed to make denial . . . in the face of an accusation, expressed directly to him or in his presence, charging him with the crime of which he is now on trial tending to connect him with its commission . . ." the circumstances of his conduct might be considered by them. Defendants contend that the court should have defined "accusation" in this instruction. The instruction seems to us to require no further definition than that given, an "accusation" "tending to connect" defendant with the crime. Moreover, if defendants desired further definition they should have offered an instruction on the subject. Citing *People* v. *Black,* 73 Cal.App. 13 [238 P. 374], where it was held that the refusal of the trial court to give an instruction to the effect that before the jury should consider any *confession* they must find that it was freely and voluntarily made, defendants contend the court should have so instructed the jury as to the *statements* made by the defendant. Defendants here offered no instruction on the subject nor was there any confession. Defendants contend that the Zimmerlin statements to Richard did not constitute accusatory statements. Zimmerlin did accuse Richard of giving false statements to the police and in answer thereto Richard admitted that he had done so.

■ The court instructed the jury to view with caution the testimony of any witness which purported to relate an oral admission of a defendant or "an oral confession by him." Defendants contend that as there was no confession the latter

8

portion of the instruction should not have been given. While, in a sense, defendant Richard "confessed ' that he had lied to the officers, it would have been better not to have given that portion. However, it is clear that leaving it out of the instruction would not have changed the verdict.

Defendants' criticism of the sentence in the instruction on weight of evidence and credibility of witnesses reading "Whether offered evidence is admissible is a question of law" is without merit.

We see no prejudice in the obviously clerical error in using the word "evidence" for "reason" in the instruction concerning the court's ruling on the admission of evidence.

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.