[Crim. No. 3175. Third Dist. Sept. 14, 1961.]

THE PEOPLE, Respondent, v. CLAYTON BIRD et al.,
Appellants.

Harry A. Ackley, under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat Agliano, Deputy Attorney General, for Respondent.

PEEK, J.—By information, defendants were charged in Count One with the crime of robbery, and in Count Two with the crime of kidnaping. The jury found them not guilty as to Count One, but guilty as to Count Two. Thus, we are only

concerned with that portion of the record relating to the second count.

Their contentions on appeal are: (1) that a gun and several cartridges were improperly admitted in evidence; (2) that the court failed to give proper instructions limiting evidence relative to admissions of a codefendant; (3) that the court erred in failing to limit the district attorney's argument to the jury; and (4) that the district attorney was guilty of misconduct and bad faith during the course of the trial and in his argument to the jury.

The record shows that the victims, Samuel Brown and Charles Voboril, were on a hunting excursion in Mendocino County. On the trip the two men stopped on several occasions for drinks and apparently Voboril became intoxicated. An argument developed. Brown, who was driving, halted the car on the Willits-Fort Bragg Road and proceeded to remove much of their luggage in preparation of spending the night. The time was then about 10:30 p. m. While so engaged, they were approached by defendants, who recently had escaped from a prison camp in the area. The victims were first approached by Keller who asked how far they were going and who was told by Brown to go away. Keller then drew a revolver and called his codefendants who, up to that point, had been hiding in the heavy brush along the highway. Keller told the victims he was an ex-convict serving a term from five years to life and that as long as they behaved they would not be harmed. The victims were forced to lie in the rear of the station wagon. With Keller driving, they started toward the coast. During all this time Bird held the gun on the victims. Although the testimony of the victims concerning their activities up to the time they parted from the defendants was somewhat fantastic, we cannot say it was incredible, for as one of the victims stated, "If a man holds a gun on me, I'm not going to argue." The remainder of the night appears to have been consumed with complete conviviality, such as driving to the coast, back to Ukiah, then to Woodland, and finally back to Richmond, during the course of which stops were made for various reasons, such as obtaining more gas, calling Voboril's wife to ascertain if her pregnancy had been consummated and purchasing more beer, finally letting the defendants out of the car in Richmond with, as Voboril testified, a "best-of-luck" goodbye.

Thereafter, Brown and Voboril drove to Vallejo where, after a discussion with Brown's father-in-law, and at his sug-

gestion, the incident was reported to the highway patrol. Mationg and Bird were arrested in San Pablo, some twelve hours later, and Keller was apprehended in Richmond. A gun was found in the back seat of the police car in which Bird and Mationg had been driven to the police station. According to Officer Morris, Bird had stated that he placed the weapon there.

Each of the defendants testified to the effect that the alleged victims had given them a ride voluntarily. All denied displaying a gun.

 Defendants first contend that the trial court erred in admitting into evidence against them the weapon found by Officer Morris. Although Brown could not identify the gun, Voboril testified that the weapon looked like the one the defendants had. The rule as stated in *People* v. *Riser*, 47 Cal.2d 566, 577 [305 P.2d 1], is that: "When the specific type of weapon used . . . is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed. There need be no conclusive demonstration that the weapon in defendant's possession was the [weapon used]. . . ." Thus, it was not necessary that the weapon introduced be identified positively as the one used by Keller. It is sufficient if the weapon resembled the one used. (*People* v. *Ferdinand,* 194 Cal. 555 [229 P. 341].) The gun had been placed in the back seat of the police car either by Mationg or Bird and, according to Officer Morris, Bird admitted placing it there. In such a case it may be introduced against all the participants, even though found in the possession of one. (*People* v. *Williams,* 53 Cal.2d 299 [347 P.2d 665].)

 Defendants also contend that the court erred in not instructing the jury that admissions made by one codefendant are to be considered against that defendant alone. When Officer Morris first testified as to the statement made by Bird that he had placed the gun behind the rear seat of the police car, and that Mationg stated he had a toy gun in his possession which he threw away before he was arrested, no limiting instruction was requested. It is clear that such limitation would have been proper had such a request been made. However, in the absence of such a request, it cannot be said to have been erroneous to admit such evidence without a limiting instruction. (23 C.J.S. 417.) It should be pointed out, however, that at various times during the course of the trial, the

court did instruct the jury that the evidence relating to admissions was to be restricted to each defendant alone.

■ Defendants' next contention is that the trial court erred when it instructed the jury that it must view with caution the testimony of any witness which purported to relate an oral admission or a confession of a defendant. Since no confession appears in the record, nor were any definitions given, it was error to give that portion of the instruction relating to confessions. Under the circumstances, however, it cannot be said to have been prejudicial to defendants or to have affected the verdict. (*People* v. *Francis,* 156 Cal.App.2d 1 [319 P.2d 103].)

■ Defendants also complain of the closing argument of the district attorney. In his final argument, the district attorney told the jury to consider the fact that Bird had a gun and that Officer Morris testified to possession of a gun by Bird and Mationg at the prison camp. While this latter portion of the statement may well have been eliminated, it was proper for the district attorney to comment on the fact Bird admitted having a weapon.

■ In addition, defendants complain of numerous questions asked them by the district attorney on cross-examination, such as the following:

"Q. And you also are aware, I take it, that possession of a pistol by a convict or even an ex-convict is a felony, are you not?"

"Q. And escaping from the honor camp is a felony, is it not?"

The district attorney also asked questions concerning prior convictions and types of offenses. While it is true that only the fact of conviction of a felony may be shown for impeachment, and that in some instances no such showing was made, nevertheless, evidence of some of such acts was already properly before the jury, such as their escape and possession of a gun. In any event, no objection was made to the questions, nor was a request made that the jury be admonished to disregard the same.

■ An objection, however, was interposed to the following question, which the witness refused to answer:

"Q. Is it not true that you and Mationg, with Mationg holding the gun, attempted to rob a man by the name of Wilson to take his car?"

There can be no question but that the last question was improper. It could only have been asked to indicate to the

jury that the accused were men who had committed another robbery.

The final contention is that the court should not have instructed the jury under the facts of this case that this form of kidnaping only requires general intent. Defendants rely on *People* v. *Oliver*, 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593]. In that case the Supreme Court said at page 768:

"Penal Code, section 207, as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto, should, following the rule of *Lorenzen* herein-above quoted [128 Cal. 431 (61 P. 68, 79 Am.St.Rep. 47, 5 L.R.A. 55)], be construed as making the one so acting guilty of kidnaping only if the taking and carrying away is done for an illegal purpose or with an illegal intent. So construed the legislative purpose will be preserved and furthered, and innocent persons who cannot have been within the legislative intention in adopting section 207 will be excluded from the operation of the law. . . ."

We do not believe that under the facts of this case an instruction on specific intent was required. The evidence does not indicate that either of the victims was so intoxicated as to be incapable of giving consent. While both had been drinking and both were obviously under the influence of liquor, they were able to fairly recount the events that had occurred; both were aware that a gun was used, and both followed the instructions of the kidnapers. Neither was unable to give his consent, as noted in the *Oliver* case. The rule in that case could only apply in cases of extreme intoxication. That is not the situation here.

While there is error in the record, the testimony of the two victims furnishes abundant evidence of the defendants' guilt and we are satisfied, from an examination of the entire record, that there was no miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 8, 1961.