[Crim. No. 4227. Third Dist. June 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER LOUIS SHEETS, Defendant and Appellant.

Walter Louis Sheets, in pro. per., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Nelson Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant Walter Louis Sheets was convicted by a jury May 16, 1966, of the crime of first degree robbery. In addition to an appeal, defendant has submitted a writ of error *coram vobis* petition to this court.

A series of arguments are made, the principal one of which is that certain physical evidence was improperly admitted in evidence over objection, to wit: a revolver, ammunition and a stocking-type mask; that the admission of this evidence was prejudicial error. We discuss this contention at length below and disallow it. Other contentions are devoid of merit. Some we discuss briefly; others require no discussion. The petition for a writ of error *coram vobis* is not properly brought.

On January 29, 1966, a Speedee Mart store was robbed in Sacramento County. The market is one of at least two Speedee Marts located in the suburban area of the county. The robbery occurred at approximately 9:30 at night. At the time of the robbery there were two occupants of the store, the clerk and a customer. The robber, having selected an item from a shelf, went to the checking station, had the sale rung up, then displayed a revolver to the clerk and demanded the contents of the cash register which he had the clerk put into a bag (approximately $200) and then departed. Before he left he warned the clerk not to follow him, that a confederate was waiting outside and "He just said not to try anything."

The same clerk had been robbed by someone else shortly before. He gave this as a reason for a close observation of this robber. His identification included the fact that defendant had a missing tooth and a freckle above one eye. The gun displayed had had a wooden butt. In the courtroom the clerk unhesitatingly described defendant as his assailant. The customer, a boy approximately 13 years of age, was also a prosecution witness. He described the circumstances of the robbery substantially as they had been described by the clerk. He noticed that one of defendant's teeth was missing. He did not

note the freckle. He also noticed the pistol with the wooden handle. He, too, positively identified the defendant in the courtroom. Defendant has a missing tooth. Both boys also had identified the defendant prior to trial in a lineup at the police station. Their identification was positive. A photograph of the men in the lineup is in evidence. A man identified as defendant is shown as one of the persons in the lineup. A composite drawing made from the description given to the officers by the clerk is in evidence. It bears a striking resemblance to the picture of defendant as shown in the lineup photograph.

On March 3, 1966, defendant was arrested under the following circumstances. Late in the evening two deputy sheriffs in a patrol car observed a car parked in a closed service station at an intersection in Sacramento County. At that intersection there was a single business establishment open, another Speedee Mart market. The officers drove over and questioned the two men standing behind the car. One was defendant, the other a companion named Biggs. Biggs stated he was the owner of the car and gave the officers permission to search it. They did so and found nothing. The officers then radiophoned headquarters and found that defendant was ''wanted.'' They made a second search of the vehicle. This time they found a revolver, ammunition and a navy watch-type cap with two holes cut in it. The gun was ''stuck between the back seat and the back seat rest with just the handle exposed.'' It was ''also under a coat.'' The mask was ''between the driver's seat and the front console.'' Other ammunition was found in the pocket of the jacket. Both officers testified positively these items had not been there at the time of their first search. In the meantime, after the first search and while the officers were engaged in the radio call, the men had gotten back into the car. Biggs told the officers the jacket was defendant's. Both men denied any knowledge of the other items.

Defendant took the stand in his own defense. He denied guilt and claimed an alibi. He testified that at the approximate time of the robbery he was with a girl friend at a bar 12 minutes by auto away from the scene. The girl corroborated defendant's testimony. As to time her testimony is somewhat questionable. The girl, however, on recross-examination testified that defendant owned a tan jacket, thus impeaching a statement which defendant had made on the witness stand that he did not possess one.

Admission of the pistol, ammunition and homemade mask into evidence was over the objection that these items did not

indicate the defendant's *"modus operandi"* and were therefore inadmissible. The argument is made that the gun and ammunition were not identified as being those used in the first robbery; also that at that time the robber had not worn a mask. We hold the items were properly admitted.

The case most often cited in the discussion of the rules applicable in cases of this type—where proof of another crime committed by a defendant is sought to be admitted into evidence or where evidence of the propensity of a defendant for the commission of crimes generally is offered—is *People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924]. There the court said at pages 314-315: ██ "It is settled in this state . . . that except when it shows merely criminal disposition (*People* v. *Cook*, 148 Cal. 334, 340 [83 P. 43] ; *People* v. *Glass*, 158 Cal. 650, 658 [112 P. 281]), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Citations.]"

The court also holds at page 315, citing *People* v. *Walters*, 98 Cal. 138, 141 [32 P. 864] : " 'It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion.' [Citations.]"

In the rule stated, evidence which *merely* proves a disposition on the part of a defendant to commit crimes is excluded. (*People* v. *Kelley*, 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947].) And even where the word "merely" can be excluded it is settled that "the relevancy of evidence of other crimes, and therefore its admissibility, must be examined with care. [Citation.] The evidence should be received with 'extreme caution,' and if its connection with the crime

charged is not clearly perceived, the doubt should be resolved in favor of the accused."

There are "guidelines." Evidence is admissible which tends to show guilty knowledge, motive, intent, *modus operandi*, or the presence of a common scheme or plan. (*Idem.*, p. 240; *People* v. *Hill*, 66 Cal.2d 536, 557 [58 Cal.Rptr. 340, 426 P.2d 908].) We recognize these as guidelines but not as inflexible, all-inclusive rules. The general rule is relevancy as stated in *Peete, supra.* ▇▇▇ Here, it is true, the items of evidence introduced showed criminal proclivities on the part of defendant. But they showed more than that. They were a part of a chain of circumstantial evidence which had relevancy to prove that defendant, although he had not yet "hit" the second Speedee Mart was about to do so. Defendant, with a companion, was discovered in an automobile parked in an unlikely spot for persons with peaceful pursuits. Defendant was a person "wanted" by the authorities. In the back of the car were the tools of the holdup man. Nearby was an open market, not a part of a large shopping center, but of a small more or less isolated intersection-compound of service stations and a market. It was late at night. The service stations were closed, the market was the only place open. A month earlier a robber identified as defendant had, in committing his crime, found that only a 17-year-old clerk was in charge of a similar Speedee Mart market.

The facts related, although very relevant, do not readily fall within the guidelines mentioned. They do not prove knowledge. They do not prove intent or motive. Cases usually come within the latter category when an act has admittedly been committed by a defendant who denies a criminal motive or intent. (See *People* v. *Claborn*, 224 Cal.App.2d 38, 44 [36 Cal.Rptr. 132].) With reference to two of the items of evidence admitted—the gun and ammunition—there is at least a suggestion that a common scheme, plan, or modus operandi was present, although most robberies are committed with weapons, and it is only because of the association of the time and place that these items have very much significance.

*People* v. *Baskett* (Oct. 1965) 237 Cal.App.2d 712 [47 Cal.Rptr. 274] (hearing by Supreme Court denied) a lewd conduct case, considered the admissibility of the testimony of a sister of the prosecutrix to acts similar to those charged performed by defendant, the grandfather of the two girls. Applying the "*modus operandi*" test the court found and held (on p. 715 et seq.) that only a propensity and disposition

of the defendant to commit lewd acts was proved. It was pointed out that "Such evidence is excluded not because it lacks relevancy, but for reasons of policy." Quoting from Dean Wigmore (1 Wigmore, Evidence, (3d ed., 1940) p. 646), the court says at page 716: " 'It is objectionable, not because it has no appreciable probative value, but because it has too much.' " It was further stated in *Baskett* (on p. 717): "There was no evidence of a 'common plan' in the sense of any single scheme or design which embraced all of the acts." The opinion identifies "common plan" with "unique methodology."

As Justice Friedman of this court stated in a recent decision, *People* v. *Covert* (Mar. 1967) 249 Cal.App.2d 81 (hearing by Supreme Court denied) at page 86 [57 Cal. Rptr. 220]: " 'Common scheme or plan' and similar phrases supply a frequent ticket of admissibility. Unfortunately the ticket has often permitted admittance without heed to the actual issues presented to the prosecution by the elements of the crime or by the claims of the defense. Several decisions point out that *scheme* or *plan* are words of several meanings. They may refer, first, to a plot to commit both the offense charged and the prior offense offered in evidence; second, to *modus operandi,* a characteristic method' employed by a defendant in the performance of repeated criminal acts. [Citations.]" In *Covert* this court, in an appeal from a conviction for incest, held that evidence of a prior act of incest upon an older daughter and parallel histories of years of sexual molestation on the two taking place in the family home was admissible.

In addition to the tests, or guidelines, listed above, Professor McCormick (McCormick, Evidence (1954) p. 330) has mentioned with some dubiety another one, "To prove identity." If both justice and predictability of decision are to be served, rigidity of tests of admission and exclusion, in our opinion, is not the answer. ██ We believe that whenever the quarrel is between relevancy and the policy of the law to protect the accused against bias and prejudice likely to be engendered from the admission of relevant evidence, a balancing process must take place—a weighing of the probative value of the evidence offered against the harm it is likely to cause. When its probative value, addressed to the crime charged, is great to prove a vital issue as compared with the lesser likelihood that a jury will be led astray and convict an innocent man because of his bad record, the evidence should

be admitted. In essence that is a test which the courts have seemingly applied in many cases where it has been unstated. In *People* v. *Trout*, 54 Cal.2d 576, 586 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418], a gun, blackjack, roll of tape, and tube of grease paint commonly used in the commission of robbery and kidnaping were held properly admitted, although they were not shown to have been used in the crime charged. In *People* v. *Riser*, 47 Cal.2d 566, 577 [305 P.2d 1], a specific type of weapon was also declared to be admissible although unidentified with the particular crime being tried. In *People* v. *Bird*, 195 Cal.App.2d 606, 609 [16 Cal.Rptr. 3], admission of an unidentified weapon resembling the one used was approved. (See also *People* v. *Lindsay*, 227 Cal.App.2d 482, 498 [38 Cal.Rptr. 755].)

 Here we weigh the relevancy of the items admitted in evidence in conjunction with the other circumstances presented against the likelihood of prejudice and find the scales heavily tipped in favor of admissibility.

Finally, even assuming, contrary to our holding, that admission of the evidence was error, when we apply the "miscarriage of justice" test (Cal. Const., art. VI, § 13) we reach the same result. Positive identification of the defendant, an easily identifiable person, made by two convincing witnesses, coupled with the presence of the defendant late at night under circumstances highly suspicious, attempts at concealment of tools of felonious employment (even if the tools themselves were inadmissible), indications that defendant and his companion were "coming to the well once too often" to "hit" a Speedee Mart market, where experience had taught that the management kept their stores open late with only a 17-year-old clerk in charge of substantial sums of money, were all cumulative to make inevitable the conclusion that a jury could not reasonably find the defendant other than guilty.

We dispose summarily of defendant's other contentions made in briefs filed in propria persona. The acts of misconduct charged against the prosecuting attorney are wholly unfounded. It was not improper for the prosecutor to refer to the tan coat in the back seat even though that coat was not introduced into evidence. Reference by the district attorney in argument to the gun, ammunition and mask is answered by the discussion above. Evidence of the officers that the store clerk had identified defendant in a lineup was not hearsay. Reference by the prosecutor to language used by the young man in making the identification, if not supported by evidence

in the record, was improper but undoubtedly inadvertent and in any event harmless. Statement by him that the testimony of the clerk alone was sufficient to convict was within the bounds of legitimate argument.

A motion for a new trial claimed to have been made is not in the clerk's transcript. Perhaps there was an intent by defendant to refer to the petition for a writ of error *coram vobis* made to this court. In defendant's brief reference is made to an affidavit by defendant's companion Biggs and the affidavit is set out in full. It states that defendant had no knowledge of the gun, ammunition or mask; also that defendant did not know where Biggs was at the time of the trial. That is all that is stated. Such an affidavit falls far short of sufficiency to sustain either the granting of a new trial or a petition for *coram vobis.* Unexplained is how the items came to be put in the back seat, why defendant did not know of Biggs' whereabouts to produce him as a witness; what efforts were made to reach him. The affidavit lacks all detail. (See *In re Imbler*, 60 Cal.2d 554, 570 [35 Cal.Rptr. 293, 387 P.2d 6] ; *People* v. *Shipman,* 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993].)

Defendant, like many other appellants convicted of a crime, claims generally that his trial counsel (privately retained) was ineffective (although defendant goes on to admit he was *not* incompetent). Actually the contention of ineffectiveness seems principally to be based upon the fact that defendant was found guilty. We deem it unnecessary to discuss the instances cited. They are mostly the product of defendant's misreading of the transcript. Our review of the record indicates defendant had highly competent representation.

A statement in the abstract of judgment that defendant was not found to have been armed with a deadly weapon ''within the meaning of Penal code sections 969a and 3024'' is confused by defendant with a finding that defendant was not guilty of first degree robbery. Facts showing he was so charged are properly included in the information. Proof he was armed is abundant and judgment and sentence for first degree robbery were correctly made and entered. (See *People* v. *Kelly,* 184 Cal.App.2d 611, 616 [7 Cal.Rptr. 600] ; *People* v. *Norris,* 125 Cal.App.2d 855, 857 [271 P.2d 59] ; *People* v. *Flohr,* 30 Cal.App.2d 576, 581 [86 P.2d 862].)

The last contention is that error made in the curtailment of cross-examination at the preliminary hearing requires a reversal. A motion was made to dismiss the information under

Penal Code section 995. The trial court correctly ruled that the cross-examination was proper and the ruling therefore error, but not prejudicial error. A question put to the clerk and going to the question of other possible lineups and proceedings in which he might have seen defendant was of only passing importance. Evidence sufficient to hold defendant was overwhelming. As the court pointed out, discovery was readily available to defendant. ■ An information will not be set aside merely because of some minor irregularity or error of this sort at the preliminary examination. (*People* v. *Elliot,* 54 Cal.2d 498, 502-503 [6 Cal.Rptr. 753, 354 P.2d 225]; *People* v. *Malloy,* 199 Cal.App.2d 219, 238 [18 Cal.Rptr. 545]; *People* v. *Wilson,* 183 Cal.App.2d 149 [6 Cal.Rptr. 872].)

Discussion of other contentions would be superfluous.

The judgment is affirmed. The petition for a writ of *coram vobis* is denied.

Friedman, J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1967. Peters, J., was of the opinion that the petition should be granted.