[Crim. No. 13625.    Second Dist., Div. Five.    Feb. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT DOUGLAS, Defendant and Appellant.

Garland H. Puckett, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—After a jury trial defendant was convicted of robbery in the first degree. The information against him had alleged that he was armed at the time of the offense and the jury found that allegation to be true. The evidence was quite simple. On October 20, 1966, at 4 p.m., Biviano Parada, the victim, cashed his pay check in a liquor store on Long Beach Boulevard. He obtained about $190 in cash. He returned to his car. Just as he was about to insert his key into the ignition there was a tapping on the window on the driver's side. He rolled the window down. Defendant[1] was standing there, holding a gun about 5 or 6 inches from the left side of Parada's face. He said: "Hand it over." Defendant seemed nervous and excited. After a little hesitation Parada gave defendant the $190 and an uncashed check. Defendant took the money and told Parada to start his car and leave. Parada did so. A few days later Parada identified defendant in a lineup. A .38 Colt pistol which was seized at the time of defendant's arrest "looked like" the one defendant had used in the holdup.

The record contains two different versions of the lineup.[2] First there is a conflict concerning the height of the other participants, four in number. Defendant is about 6'1" tall. Concerning the height of the others Parada testified as follows: "Q. And could you give us an estimate of the height of the other four? Would you say they were five foot five, six, seven, or eight? A. About five foot nine, I think—About five foot five—around there. Q. The other four were at least four or five inches shorter than Mr. Douglas, is that correct? A. *There was one there about his size. . . .*" (Italics added.)

Defendant testified that he was the tallest in the group and

---

[1] Parada formally identified defendant in the courtroom and, as will be seen, testified to his own extrajudicial identification at a police station.

[2] The only witnesses who testified concerning the lineup were Parada and defendant. The record shows that, apart from the others in the lineup, there were at least two more persons in the room, a police officer and a lady who had been with Parada during the holdup.

that all the others were from 4 to 5 inches shorter than he.

Parada gave conflicting testimony concerning the possibility that he identified the defendant as the result of police suggestion. We quote his relevant testimony in full: "Q. Isn't it a fact that at the time you were at the lineup, you shook your head and said you couldn't identify anybody? A. I didn't shake my head. Q. What did you say to the officer? A. I said, 'That is him all right.' Q. You said that? A. The officer. Q. The officer said that? A. Yes. Q. You didn't say that? A. No—I said it. *The officer said, 'Is that him?'* And I said, 'It is him, all right, but I can't be sure. It might be twins. I don't know, but that is him all right.' Q. But the officer said to you first, 'That is him?' referring to Douglas? A. No. Q. Well, tell us the sequence of events. A. He asked me, 'Do you recognize him?' Q. Then what did you say? A. I said, 'Yes. That is him over there.' Q. That is what you said? A. Yes. Q. What did the officer say to that? A. He didn't say nothing, He told me, 'We might call you later.' '' (Italics added.)

It is obvious that, while being questioned, Parada changed the thrust of his testimony. His very first answer—"that is him all right"—is only compatible with a question from the officer referring specifically to defendant. Indeed, a few answers later Parada confirmed that the officer had asked such a question. That, of course, is the point where defense counsel should have changed the subject. Instead he pursued the matter and Parada came up with different answers.

It is, to be sure, entirely possible that Parada was merely confused and that his later answers were a true reflection of his recollection. On the other hand, it is just as possible that Parada realized that his initial answers were not pleasing to the prosecutor and that he therefore changed his story. Even if it were our function to do so, we, at the appellate level, are poorly equipped to resolve the conflict in Parada's testimony.

Defendant confirmed the first version of Parada's testimony by testifying that he could hear the police officer telling Parada that he wanted him to take a good look at defendant.[3]

There was no objection to the admission of the testimony concerning the lineup identification. It would have been futile to attempt to keep it out. *People* v. *Gould*, 54 Cal.2d 621, 625-627 [7 Cal.Rptr. 273, 354 P.2d 865] makes testimony of an extrajudicial identification admissible. (See Evid. Code,

---

[3]Defendant added that after this instruction Parada said: ''No, no.''

§ 1238.) Any suggestion that the lineup was unfair would have been met by a reference to *People* v. *Parham,* 60 Cal.2d 378, 380 [33 Cal.Rptr. 497, 384 P.2d 1001], holding that ''The manner in which the lineup was conducted affects only the weight of the witnesses' testimony, not its admissibility.''[4]

The law is not the same today as it was at the time of trial. In *Stovall* v. *Denno,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967], decided about six months later, it was held that an ''unnecessarily suggestive'' lineup amounted to a denial of due process. Our own Supreme Court complied with the mandate of *Stovall* in *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21] and *People* v. *Caruso,* 68 Cal.2d 183, 187-189 [65 Cal.Rptr. 336, 436 P.2d 336].[5]

■ The failure to assert the then unknown due process right at the trial below is obviously excusable. (*People* v. *Doherty,* 67 Cal.2d 9, 13-15 [59 Cal.Rptr. 857, 429 P.2d 177] ; *People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382] ; *People* v. *Kitchens,* 46 Cal.2d 260, 262-263 [294 P.2d 17].)

■ If it is true that the police officer singled out defendant from those in the lineup, we see no escape from the conclusion that the lineup was constitutionally unfair.[6] On the other hand the lineup may well have been such as would meet *Stovall* and *Caruso* standards. The factual conflict was never resolved—indeed, in view of *People* v. *Parham, supra,* it would, at that time, have been error to do so and to exclude the lineup identification and its fruits, if any.[7]

The situation with which we are faced today parallels that which our appellate courts encountered from time to time

[4]After the trial of the instant case in January, 1967, the Supreme Court stood by its holding in *Parham.* (*People* v. *Diaz,* 66 Cal.2d 801, 804-805 [58 Cal.Rptr. 729, 427 P.2d 505].)

[5]See also *People* v. *Pedercine,* 256 Cal.App.2d 328, 335-337 [63 Cal. Rptr. 873] holding that a masculine appearing female must not be put in a lineup with six glamour girls.

[6]We are not prepared to say that, standing alone, the fact that defendant may have been taller than the others in the lineup, would constitute unfairness.

[7]We have no doubt that *Stovall* applies to this appeal. In *Stovall,* the case which also decided that the right to have counsel present at a lineup, fashioned in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], only applies to lineups after June 12, 1967, the date of the decisions, the court gave as one of its reasons for the prospective application of the right to counsel that ''it remains open to all persons to allege and prove, as Stovall attempts to do in this case, that the confrontation resulted in such unfairness that it infringed his right to due process of law.'' (*Ibid.,* p. 299.)

when dealing with trials that took place before the so-called *Escobedo-Dorado* rule was established, but where the case reached the appellate court thereafter. In *People* v. *Schader,* 62 Cal.2d 716 [44 Cal.Rptr. 193, 401 P.2d 665], there was conflicting evidence concerning an alleged request for counsel by one of the defendants. The court held that the factual conflict should have been resolved by the trial judge before the confession was admitted. (*Ibid,* pp. 727-728.) In *People* v. *McGee,* 238 Cal.App.2d 203 [47 Cal.Rptr. 640], the facts were quite similar and again it was held that the conflicting factual versions should have been resolved by the trial judge. (Cf. *People* v. *Henry,* 65 Cal.2d 842, 846-847 [56 Cal.Rptr. 485, 423 P.2d 557].)

For guidance at the retrial two matters are worth noting.

1. If, after resolving the factual conflict, the trial court determines that the lineup was unfair, Parada is not necessarily precluded from identifying defendant in the courtroom if the People can establish that the courtroom identification "had an independent origin." (*United States* v. *Wade,* 388 U.S. 218, 239-242 [18 L.Ed.2d 1149, 1166, 87 S.Ct. 1926] ; see also *Gilbert* v. *California,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186, 87 S.Ct. 1951] and *People* v. *Stoner,* 65 Cal.2d 595, 601-602 [55 Cal.Rptr. 897, 422 P.2d 585].)

2. If the trial court decides that the lineup was fair, defendant may nevertheless offer, before the jury, such evidence of unfairness as he can produce. This would affect the weight, rather than the admissibility of the identification. (Evid. Code, § 406.)

The judgment is reversed.

Hufstedler, J., and Stephens, J., concurred.