[Crim. No. 7153. First Dist., Div. One. Apr. 15, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE NEAL, JR., Defendant and Appellant.

Lynn E. Higgins, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John P. Oakes, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction, following a jury trial, of robbery in the first degree (Pen. Code, § 211). Defendant contends: (1) that he was denied due process of law because an unnecessarily suggestive identification procedure was used to connect him with the crime; (2) that he was denied the right of cross-examination because of the failure of the prosecution to make available certain photographs used in the identification procedure; and (3) that he was denied due process of law and equal protection of the law because of the method used in the selection of the jury. For reasons set out below, we find no merit in any of these contentions.

## The Facts

Some time shortly before 4 p.m. on September 15, 1967, defendant came into the offices of Beneficial Finance Company on MacArthur Boulevard in Oakland. At that time Robert Fannon, a company employee, observed defendant sitting in one of the office booths. This booth was situated approximately 5½ feet from Fannon's desk. After conversing briefly with defendant, Fannon left the office on business errands and was not present when the subsequent robbery took place.

Another employee, Mrs. Rosemarie Gish, approached defendant and asked if she could be of assistance, but she returned to her desk after defendant replied that he wanted to see only the manager. At approximately 4:10 p.m. Donald Good, the office manager, joined defendant in the booth. Defendant inquired about the possibility of borrowing some money on a 1962 Chevrolet. The manager checked the automobile Blue Book and after quoting a potential loan figure, he reached in a drawer for an application form. When he looked up defendant was pointing a gun directly at him. The manager then stood up and moved to the front of the office while defendant jumped over the counter and into the inner part of the office. Defendant then gave a paper sack to another employee, Miss Carmen Sandoval, and ordered her to put all the money in the sack. Miss Sandoval emptied her cash drawer, placing between $300 and $400 in the sack which defendant had given her. After the manager convinced defendant that there was no additional money in the office safe, the employees were herded into a back room of the office and defendant left the premises. Defendant took the stand and testified that he was not in Oakland on the day of the robbery.

## The Identification Procedure

Mr. Fannon, Mrs. Gish, Miss Sandoval, and Mr. Good each identified defendant in court during the course of the trial. No objection was interposed to this identification. On cross-examination by defense counsel it was developed that each of these witnesses had made a pretrial identification of defendant after viewing photographs. This examination disclosed that shortly after the day of the robbery certain employees were taken to the Oakland police station[1] for the purpose of

---

[1]There is some degree of discrepancy in testimony as to the length of time that elapsed between the robbery and the day the employees went

assisting in identifying the robber. Mrs. Gish and Janet Clayton went to the station one morning and proceeded to go together through hundreds of pictures in the file before both of them came upon the picture of defendant and identified him as the person who had robbed the office. Later that same day Mr. Good and Miss Sandoval went to the station and also looked at several hundred photographs without identifying the robber. At this time the photograph of defendant was not in the file because it had been removed for comparison purposes. Later Miss Sandoval was handed a group of eight or nine photographs and identified a picture of defendant as the robber. Mr. Good was then given the same group of photographs and made the same identification.[2] He testified that he and Miss Sandoval viewed the group of pictures separately when they were sitting approximately three or four feet apart and he further testified that he did not see the photograph chosen by Miss Sandoval.[3] Mr. Fannon identified a photograph of defendant which was shown to him at his office. He was shown only the one picture and he testified that his identification was predicated on the fact that the person in the photograph had a scar on his nose.

Inspector Alex Cunningham, who was in charge of the investigation of the subject robbery, was subsequently called as a witness for defendant. His testimony with respect to the procedure followed by Mrs. Gish and Miss Clayton in making the photographic identification was substantially the same as testified to by these witnesses. He testified that each of these witnesses were looking at different files and that they came upon defendant's picture at different times. He also stated that he asked them to try and find the suspect's picture, or anybody that ''looked close to him,'' and that then he went about other business until the ladies came to him and showed him a picture of defendant.

With respect to the procedure followed by Miss Sandoval and Good, Cunningham testified that these persons were given

to the police station to assist in identification. Mrs. Gish testified that it was more than a day after the robbery, but less than a month. She suggested that it was possibly a week later. Miss Sandoval testified that it was approximately a week and a half or two weeks after the robbery. Mr. Good, the manager, testified that the employees went to the station just a few days after the incident.

[2] All photographs in the group reviewed by Miss Sandoval and Mr. Good were photographs of Negroes.

[3] However, Miss Sandoval testified that since Mr. Good was right next to her at the time, he ''must have'' seen the photograph that she picked out before he made his identification.

eight pictures among which was a picture of defendant; that the other seven photographs were taken from his desk where they were kept with a group of pictures for comparison purposes; that he picked out seven that were "similar" to that of defendant; that the seven were of "colored people"; that Miss Sandoval and Good looked at the eight photographs separately and each picked out defendant's picture as that of the robber; and that after this identification Cunningham asked Miss Sandoval and Good to look through the mug file containing hundreds of photographs; that defendant's picture was not then among these photographs; and that he did this in fairness to defendant "to see if there was any other pictures."

Defendant now argues that he was denied due process because a suggestive identification procedure was used to connect him with the crime. He challenges only the fairness of the identification of photographs of himself, and does not question the basic fairness of the subsequent lineup procedure. Defendant particularly questions the fact that the witnesses were allowed to view the photographs in pairs,[4] and suggests that this procedure allowed unnecessary reinforcement of possibly erroneous identification.

Adverting to pretrial photographic procedures, we note that, absent unfair suggestiveness, the employment of photographs as an investigative tool is an approved procedure. (*Simmons* v. *United States,* 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967].) The applicable standard is set out in *Simmons* as follows: "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967], and with decisions of other courts on the question of identification by photograph. [Fn. omitted.]" (P. 384 [19 L.Ed.2d p. 1253].) (See also *People* v. *Laursen,* 264 Cal.App.2d 932, 943-944 [71 Cal.Rptr. 71]; *People* v. *Bolt,* 265 Cal.App.2d 614, 615-616 [71 Cal.Rptr. 511].) Accordingly, where the identification process is

---

[4]Defendant also suggests that the process of identification was defective because of the time lapse between robbery and review of the photographs. However, he does not develop this argument or actually suggest in what way the delay might have been detrimental.

so suggestive as to possibly lead to mistaken identification a denial of due process may result. (*People* v. *Feggans*, 67 Cal.2d 444, 448-449 [62 Cal.Rptr. 419, 432 P.2d 21] ; *Stovall* v. *Denno, supra,* at pp. 301-302 [18 L.Ed.2d at pp. 1205-1206].)

In determining whether pretrial photographic procedures were impermissibly suggestive it appears to us that, by analogy, the procedure invoked in cases involving pretrial lineup identifications is applicable. ▮ Accordingly, where it is claimed that the courtroom identification is the result of an impermissibly suggestive pretrial photographic procedure, the trial court must determine whether such procedure was unfair; and if there are conflicting factual versions, the conflict must be resolved by the trial judge. (*People* v. *Douglas,* 259 Cal.App.2d 694, 698 [66 Cal.Rptr. 492].) ▮ If the trial court determines that the photographic identification procedure was unfair, the identifying witness is not precluded from identifying the defendant in the courtroom if the People can establish that the courtroom identification has an independent origin. (*United States* v. *Wade,* 388 U.S. 218, 239-242 [18 L.Ed.2d 1149, 1164-1166, 87 S.Ct. 1926] ; *Gilbert* v. *California,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186, 87 S.Ct. 1951] ; *People* v. *Stoner,* 65 Cal.2d 595, 601-602 [55 Cal.Rptr. 897, 422 P.2d 585] ; *People* v. *Douglas, supra.*) On the other hand, if the trial court decides that the photographic procedures were fair, the defendant may, nevertheless, offer before the jury such evidence of unfairness as he can produce, and such evidence affects the weight rather than the admissibility of the identification. (*People* v. *Douglas, supra;* Evid. Code, § 406.)

▮ In the instant case defendant made no objection to the in-court identification at the time the witnesses made such identification, nor did he make any claim of unfairness in the pretrial photographic procedures at the time the witnesses testified. He did, however, make a motion to strike the testimony of the witnesses on the basis of a denial of due process after the prosecution had rested its case, and, again, at the conclusion of the case.[5] These motions were denied. It is apparent that, since the trial judge was not called upon to initially determine the fairness of the pretrial photographic

---

[5]In *People* v. *Short,* 269 Cal.App.2d 746, 748 [75 Cal.Rptr. 156], it was held that the failure to object to in-court identification on the basis that such identification was the result of impermissibly suggestive pretrial photographic procedures precluded the raising of such issue on appeal. (See also *People* v. *Rodriguez,* 266 Cal.App.2d 766, 770 [72 Cal.Rptr. 310].)

procedure outside the presence of the jury, he made a determination, based on the evidence before the jury, that such procedure was fair, thus leaving the weight of such evidence for the jury's consideration.

We agree with the trial judge that the pretrial photographic identification process was not so suggestive as to possibly lead to mistaken identification. The identification procedure used appears to us to be eminently fair and free of suggestiveness. We note, initially, that it would clearly have been impossible for the police to have suggested the photograph of defendant to Mrs. Gish or Miss Clayton since the record indicates that at the time they went through the files the police had no inkling of defendant's identity. The record discloses, moreover, that these two witnesses each independently identified defendant after looking at "hundreds" of photographs of other individuals.

The fairness of the identification procedure is also inherent in the photographic identification made by Good and Miss Sandoval. After reviewing several hundred photographs which did not include that of defendant these witnesses declared that they could not identify defendant from any of these photographs. This is indicative of a conscientious effort on their part to be fair and militates against any claim of a haphazard or a snap identification. The subsequent review of a limited group of photographs included a large enough sampling of pictures to validate the identification that both Mr. Good and Miss Sandoval were then able to make. We are also convinced that the identification was not impermissibly suggestive even under Cunningham's testimony that Good and Miss Sandoval viewed the eight photographs *before* they looked at the large number of photographs in the mug file. The fact that neither identified another photograph is indicative of the validity of their initial identification from the selected group and the fairness of the procedure invoked.

No element of suggestion by the police is indicated by the record. It should be further noted that the record indicates that each of the eyewitnesses to the robbery made an immediate identification of the photograph of defendant. None of them showed the slightest doubt as to his identity. Moreover, in the light of the record, the in-court identification by the witnesses can be said to have an "independent origin" since each actually saw defendant on the premises, and all, except one, observed the man who perpetrated the robbery. We con-

clude, therefore, that under the particular circumstances of this case there was no denial of due process of law.[6]

Defendant also argues that because some witnesses attended a lineup and because some witnesses were again shown photographs, the identification of defendant was so unfairly reinforced as to lead to the possibility of misidentification. In considering this argument, we note that defendant does not claim that the lineup or the pretrial photographic identification were unnecessarily suggestive and conducive to irreparable mistaken identification, but that the in-court identification is rendered suspect because it was reinforced by the identification made at the lineup and the photographic identifications. ■ The answer to this contention is that absent unfair suggestiveness, the employment of lineup and photographic identification procedures are proper notwithstanding they may have the effect of bolstering or reinforcing the in-court identification.[7]

### Right of Cross-Examination

■ Defendant claims he was denied due process because the prosecution failed to make the identification photographs available, thereby denying him his right to cross-examine on the matter of identification. The record discloses that during the cross-examination of Mrs. Gish, the first witness for the prosecution, defense counsel moved ''to discover'' the photograph she had identified as that of defendant at the police station, and that at that time the prosecutor turned over three photographs of defendant with the observation that it ''could be any one of these three, I believe. I am not sure.'' Mrs. Gish then testified that the one she had identified was one of these photographs. Defense counsel then moved ''to discover other photographs which the District Attorney has in his possession of Mr. Neal,'' and the district attorney thereupon delivered

---

[6]Defendant also challenges the identification by Mr. Fannon since it was made from a single photograph after he knew that other witnesses had made an identification. However, police did not actually request identification assistance from Mr. Fannon and he was only shown the photograph at the Beneficial Finance Company office. As we have seen, Mr. Fannon did not witness the robbery.

[7]Defendant also apparently contends that this ''reinforcement'' led to discrepancies in the details of testimony as to the physical characteristics and dress of defendant. The discrepancies indicated in the brief are mainly between Mr. Good's testimony at the trial and at the preliminary hearing. The preliminary hearing transcript is not a part of the record before the court. Defendant, however, bases a good part of his argument on the fact that Mr. Good at the preliminary hearing thought defendant had a mustache. The record seems to indicate, moreover, that the lineup was discussed only at the preliminary hearing.

another photograph of defendant which had been taken after defendant had been arrested for the instant offense. Defense counsel then moved to discover the other photographs of defendant taken in connection with prior convictions. In response to this motion the prosecutor stated that he did not have them in his possession but would attempt to have "the exact pictures" brought into court by Cunningham.

During the cross-examination of Miss Sandoval, defense counsel moved to discover the group of eight photographs out of which she had picked the one of defendant. The prosecutor stated that he did not have these photographs. Cunningham testified that he did not know where these photographs were at this time, that they were probably back in the mug file, and that he didn't know which ones they were.

In considering defendant's contention we note that the prosecution made available all of the identification photographs of defendant, and that all of the witnesses who saw defendant on the premises, except Good (who was not shown photographs and questioned about them), were cross-examined concerning the identification photographs of defendant. We note that defendant's primary argument seems to be focused on the failure of the prosecution to produce the other photographs that were in the selected group reviewed by Good and Miss Sandoval, the whereabouts of which photographs were unknown to the prosecution or the police at the time of trial. With respect to these photographs we observe that they were in no way involved in the photographic identification made by Mrs. Gish and Miss Clayton and that they would have served only in the cross-examination of Good and Miss Sandoval. The record discloses, moreover, that Good and Miss Sandoval were cross-examined in great detail about the circumstances of the pretrial photographic identification procedure. As already pointed out, nothing was developed which was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

The record discloses, moreover, that the subject pictures which defendant sought to discover were unavailable at the time of trial, and there is nothing in the record which even hints that they were being improperly withheld by the prosecution. Moreover, we note that no objection was interposed by defendant on the ground that he was improperly denied discovery or that he was denied the right of cross-examination. Rather, his sole objection was in the form of a motion to strike the testimony of all the witnesses who had made identi-

fication in court. This motion was interposed at the conclusion of Cunningham's testimony and was directed to a claimed denial of due process allegedly resulting from discrepancies in the testimony of Cunningham and other witnesses. It is a well-established rule that the failure to make a proper objection in the trial court amounts to a waiver and precludes a defendant from raising such error as a ground on appeal. (See *Robison* v. *Superior Court,* 49 Cal.2d 186, 187 [316 P.2d 1]; *People* v. *Kitchens,* 46 Cal.2d 260, 262 [294 P.2d 17].)

Considering the strength of the eyewitness identification by all employees present at the scene of the robbery, we are satisfied that defendant was not prejudiced by the failure to produce the photographs for comparison purposes and for purposes of the cross-examination of Good and Miss Sandoval. Moreover, we are convinced beyond a reasonable doubt that the failure to produce this limited group of photographs did not contribute to the verdict rendered in this case. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].)

### The Question of the Jury Panel

 Defendant's final contention is that he was denied due process and equal protection of the law because the jury panel from which his jury was selected was chosen under a system which systematically excluded persons of low income groups and racial minorities. He grounds his argument on a superior court decision[8] rendered by another judge in the court below subsequent to the verdict in this case. In that case the trial court sustained a challenge to a jury panel essentially on the ground that the selection tests given to prospective Alameda County jurors tended to disproportionately exclude racial minorities and citizens with lower incomes in violation of the due process and equal protection clauses of the Fourteenth Amendment. Because the disapproved jury selection test was in operation at the time defendant was tried in the instant case, he now maintains that his conviction should be reversed.

Although we may take judicial notice of the Alameda County Superior Court decision cited by defendant, we cannot, by doing so, review the constitutional challenges to the jury panel. Defendant concedes that no challenge was made to the jury panel before it was sworn as required by Penal Code section 1060, as was the case in the superior court case he

[8]*People* v. *Craig,* Alameda County Superior Court No. 41750.

relies upon. The matter is raised here for the first time on appeal. No constitutional question was urged in the court below. It is settled in California that on a direct appeal from a judgment a reviewing court will not consider matters outside the record. (*People* v. *Sparks,* 257 Cal.App.2d 306, 310-311 [64 Cal.Rptr. 682]; *People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Dabney,* 250 Cal.App.2d 933, 946 [59 Cal.Rptr. 243].) It is clear that the device of our taking judicial notice of the superior court opinion in no way relieves defendant of the responsibility he had for raising his challenge in the court below. (See Pen. Code, §§ 1060, 1070; *People* v. *Stabler,* 202 Cal.App.2d 862, 865 [21 Cal.Rptr. 120].)

Defendant relies on *People* v. *Douglas, supra,* 259 Cal.App. 2d 694, 697 for the proposition that the failure to assert a then unknown due process right at the trial is obviously excusable. However, *Douglas* is distinguishable because it dealt with the due process questions surrounding lineup identification and the trial took place before the decision in *Stovall* v. *Denno, supra,* 388 U.S. 293. Here we are not dealing with an unknown right, since the right to an impartial jury drawn from a cross section of the community has long been recognized. (See *Thiel* v. *Southern Pac. Co.,* 328 U.S. 217 [90 L.Ed. 1181, 66 S.Ct. 984, 166 A.L.R. 1412] which was decided in 1946; and see *People* v. *Carter,* 56 Cal.2d 549, 568-569 [15 Cal.Rptr. 645, 364 P.2d 477].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1969.