[Crim. No. 10586. First Dist., Div. One. Aug. 27, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL THOMAS ENOS, Defendant and Appellant.

## COUNSEL

G. Kip Edwards, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci, Derald E. Granberg and Clifford K. Thompson, Jr., Deputy Attorneys General for Plaintiff and Respondent.

## Opinion

**MOLINARI, P. J.**—Defendant appeals from a judgment of conviction of second degree burglary. (Pen. Code, § 459.)

### The Substantive Charge

The criminal proceedings against defendant arose from an incident occurring on October 15, 1971. At 9 a.m. on that day the doorbell rang at the home of Dr. and Mrs. Clark Kistler, who resided at 83 Almond Avenue, Los Altos. Mrs. Kistler saw a man through the hall window and went to put on a robe before answering the door. When she opened the door, the man was no longer there, but an orange Volkswagen was parked in her driveway.

Mrs. Kistler then went outside to look around and saw a man standing in the back of the garage, facing a tool chest. She did not see anything in his hands, but when she spoke the man moved and she heard a metallic, clanging sound. According to her testimony the following conversation took place: "What was it that you wanted?" she inquired. The man responded, "I was looking for the man who lives here. He told me to pick up some tools." Mrs. Kistler replied, "That couldn't be right. There must be some mistake." The man then asked, "Mr. Sanderson doesn't live here?" "No," Mrs. Kistler said, "Mr. Sanderson doesn't live here." The man inquired, "Isn't this 84?" Mrs. Kistler replied, "No, this is 83." The man then left and drove away.

Dr. Kistler's tools were in order when he left that morning. However, when he returned for lunch, he noticed several tools, some in a metal box, in the middle of the garage floor. Nothing appeared to be missing from the garage.

Mrs. Kistler identified defendant as the man she saw through the hall window and as the man standing in the back of the garage with whom she had the conversation above narrated. Mrs. Kistler testified that there was no house numbered "84" on the street where her house was located and that the number "83" appeared on the outside of her home and garage doors.

Defendant testified that on that day he was looking for a friend who lived in a white house. He declined to give the friend's name. He stated that he parked his car in the driveway, knocked on the door, and, receiving no response, returned to his car. As he passed the garage, he noticed a flag on the wall and entered to look at it. He denied moving any tools within the garage or telling Mrs. Kistler that he was there to pick

up tools. He stated that the metallic noise heard by Mrs. Kistler occurred when he dropped his key chain which has a large medallion attached to it.

Defendant admitted a prior conviction in 1961 for possession of a narcotic, and the jury was instructed that the jury might consider this conviction in assessing defendant's credibility.

### Prior Acts

The prosecution was permitted to introduce evidence of two alleged similar acts committed by defendant over defendant's objection. In his offer of proof the prosecutor outlined the nature of the testimony to be adduced to establish the alleged similar acts but at no time did he indicate to the court the specific issue which would make the evidence of the other acts relevant. In the colloquy between court and counsel the attorney for defendant stated that identity would not be an issue since defendant would admit that he was the person present at the Kistler premises with whom Mrs. Kistler spoke on the date of the instant incident giving rise to the charge of burglary. Upon inquiry of defense counsel by the court as to whether intent was an issue, counsel responded that it was. The trial court then indicated that it would admit the evidence of the alleged similar acts and overruled defendant's objection. The two prior incidents were alleged to have occurred on November 10, 1970 and September 15, 1971. The instant incident occurred on October 15, 1971. No contention is made that evidence of the prior incidents was too remote.

In its instructions to the jury with respect to the prior incidents the trial court instructed, with particular regard to the purpose for which this evidence was received, that it was admitted to show motive, intent, knowledge or possession of the means useful or necessary for the commission of the crime charged, and as a characteristic method, plan or scheme similar to the commission of the offense in this case.

### A. *Incident of November 10, 1970*

Officer Ron Tannehill of the San Jose Police Department testified that on November 10, 1970, he and his partner, Officer Wittenberg, were working as undercover agents in the business area of San Jose. At about 3:55 p.m. Tannehill observed defendant standing on the sidewalk talking with three other people. Defendant then got into a car parked on the street. Tannehill approached the car, and as he did so he saw defendant place his feet on a box located on the floor of the car.

At this point in the officer's testimony defense counsel was permitted to *voir dire* the witness outside the presence of the jury. The following facts were disclosed during the *voir dire:*

Defendant and the three people to whom he had been talking got into a car legally parked on the street. Defendant was seated in the rear seat on the passenger side, on the traffic side of the car. According to the officer, the two officers approached the car because they suspected that the woman in the car was the subject of a felony arrest warrant. Their suspicion proved to be incorrect.

As they approached the car the officers saw defendant place a leather jacket over an unknown object in the front seat. Tannehill testified that it appeared as if he were trying to conceal something. Defendant was also observed placing his feet on a box on the floor.

The officers learned that the car belonged to defendant and began questioning him. Defendant indicated that the box contained a projector which belonged to his wife. He further indicated that he was attempting to sell it at a pawn shop. The persons in the car were ordered out of the vehicle and Officer Wittenberg questioned defendant. Identification and warrant checks were run on all four persons and no warrants were found to exist.

Tannehill testified that he saw his partner make a "pat" search of defendant. He stated that he believed defendant to be armed because of the nature of the area, the people he was with and "circumstances." Tannehill stated that he had knowledge of two of the people with defendant and knew that they had arrest records. The officer stated that he did not know defendant. The search of defendant produced what appeared to be a narcotics kit and defendant was arrested.

During further conversation with defendant Tannehill concluded that he changed his story as far as ownership and possession of the property in the car. The officers then suspected that the property was stolen and arrested defendant for possession of stolen property and confiscated the property in the car.

Tannehill testified that defendant was given the *Miranda* warning (*Miranda v. Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) but the record is unclear as to when it was given. Tannehill stated the warning was given before the conflicting statements were allegedly made by defendant, but his testimony seems to indicate that no further questioning took place after the *Miranda* warning. The officer then stated that the search of defendant's person took place after defendant had given different versions as to his possession of the property.

The defense contended that the "pat" search and detention were unlaw-

ful and moved to suppress the evidence that resulted from these occurrences. The motion was denied.

The jury returned and Tannehill testified as to the discovery of certain articles during the vehicle search after defendant had been arrested. These articles consisted of a projector, two electric drills, an electric drill bit set, a lawn mower, a projector table, and an electric razor. The projector was found in the immediate area of defendant and the remaining articles were found in the glove compartment and the trunk and the back seat.

After the officer's testimony Christopher Jahnsen testified that his garage and home had been broken into on the morning of November 10, 1970, and that a Kodak projector, an electric shaver, a power saw, and some tools were missing. As to the property seized by the officers as a result of the search of defendant's automobile Jahnsen identified the electric razor and the box in which his projector had been contained.

Mr. Thomas Waller then testified that on the morning of November 10, 1970, he discovered that a lawn mower and a drill motor with drill bits had been taken from his locked garage. Waller identified the lawn mower, the drill motor, and the drill bits among the property seized by Tannehill in the search.

With respect to the items found in his car by the police officers, defendant testified that he purchased them from a person who needed money. He denied knowing that the items were stolen, and testified that he had never seen Jahnsen or Waller and had never been to their residences.

Defendant admitted that with respect to these items of property he was charged with receiving stolen property and that he entered a plea of guilty to the charge. He stated that because of the plea the crime was determined to be a misdemeanor and that he entered a plea of guilty in order to avoid a conviction which possibly could result in a state prison sentence.

B. *Incident of September 15, 1971*

Mrs. Gail Scott testified that about 11 a.m. on September 15, 1971, she returned to her home at 816 Tamarack in Sunnyvale; that as she approached the house in her car she noticed an orange Volkswagen parked in her driveway, and that its motor was running. When asked by the prosecutor if she had occasion to see anyone about her house, defense counsel approached the bench, and outside the hearing of the jury, stated to the trial judge that he wanted to "voir dire on the identification outside the presence of the jury . . . ." When queried by the court as to his reason for the *voir dire,* defense counsel responded "She may have been

shown five photos of the defendant for all I know." The judge responded, "All right. Take it up on cross-examination."

Mrs. Scott then resumed her direct testimony. She stated that she observed a man in her front yard looking into a bedroom window; that as she stopped her car the man approached her and asked if a Mr. Garcia lived there; that when she responded in the negative, the man asked her if Mr. Garcia lived in the area; and that when she responded she didn't know, the man got in the Volkswagen and drove away. Mrs. Scott testified further that she recorded the license number of the Volkswagen on a matchbook cover. The witness was then asked by the prosecutor if the man she saw on September 15 was in court. Mr. Scott responded, "I believe it is the defendant." She then pointed out defendant and stated, ". . . I saw him for a very short period, maybe not even one full minute, and at the time his hair was short but I am almost 100% positive."

On cross-examination Mrs. Scott was asked if she had ever been shown any photographs of individuals who might be the person she saw on the day in question. She responded she had been shown five or six photographs by the police about two weeks after the incident, and that she picked out one photograph as possibly being that of the man in question, but told the officers that the photographs were "deceiving" and that she "couldn't be positive." Mrs. Scott testified that defendant looked like the person she saw in the photograph that depicted the person she believed might possibly be the man she saw at her house. The witness then stated that defendant reminded her 100 percent of the man she saw at her home although he then appeared to be much taller.

When called to the stand as a witness defendant denied that he was the person seen by Mrs. Scott. He admitted that he knew a Mr. Garcia in Sunnyvale but stated he did not know his address.

## C. *Applicable Principles*

The question presented deals with the relevancy of the subject evidence. The applicable rule is stated in Evidence Code section 1101, in pertinent part, as follows: "(a) . . . evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion. (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts. . . ."

■ In the application of this rule in a criminal case the general test of admissibility is whether the evidence tends logically, naturally and by reasonable inference, to establish any fact material for the People, or to overcome any material matter sought to be proved by the defense. (*People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924]; *People* v. *Kelley,* 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Durham,* 70 Cal.2d 171, 186 [74 Cal.Rptr. 262, 449 P.2d 198] [cert. den. 395 U.S. 968 (23 L.Ed.2d 755, 89 S.Ct. 2116)]; *People* v. *Schader,* 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841]; *People* v. *Curcio,* 255 Cal.App.2d 183, 186 [63 Cal.Rptr. 184] [cert. den. 392 U.S. 912 (20 L.Ed.2d 1370, 88 S.Ct. 2071)].) "If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not." (*People* v. *Peete, supra,* at p. 315; *People* v. *Curcio, supra;* see *People* v. *Schader, supra,* at p. 774; and see *People* v. *Zankich,* 189 Cal.App.2d 54, 62-63 [11 Cal.Rptr. 115].)

Where the proffered evidence is that of other crimes it "should be scrutinized with great care, however, in light of its inherently prejudicial effect, and should be received only when its connection with the crime charged is clearly perceived." (*People* v. *Durham, supra,* 70 Cal.2d 171, 186-187.) If its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. (*People* v. *Kelley, supra,* 66 Cal.2d 232, 239; *People* v. *Albertson,* 23 Cal.2d 550, 577 [145 P.2d 7].) This principle is consonant with that stated in Evidence Code section 352 that the court in its discretion may exclude evidence if its probative value is substantially outweighed by its prejudicial effect. (See *People* v. *Archerd,* 3 Cal.3d 615, 638 [91 Cal.Rptr. 397, 477 P.2d 421]; *People* v. *Durham, supra,* at p. 186; *People* v. *Schader, supra,* 71 Cal.2d 761, 772.) "When its probative value, addressed to the crime charged, is great to prove a vital issue as compared with the lesser likelihood that a jury will be led astray and convict an innocent man because of his bad record, the evidence should be admitted." (*People* v. *Sheets,* 251 Cal.App.2d 759, 764-765 [59 Cal.Rptr. 777]; *People* v. *Schader, supra,* pp. 761, 774.) On the other hand, where the sole purpose and effect of the evidence of other crimes is to show the defendant's bad moral character or disposition to commit crime, the evidence should be excluded. (*People* v. *Peete, supra,* 28 Cal.2d 306, 314; *People* v. *McMonigle,* 29 Cal.2d 730, 742 [177 P.2d 745].)

■ It is settled that evidence of other crimes is admissible where it helps or tends to show motive, intent, premeditation, guilty knowledge, malice, identity, modus operandi, or presence of a common plan, design

or scheme. (*People* v. *Albertson, supra,* 23 Cal.2d 550, 576; *People* v. *Westek,* 31 Cal.2d 469, 480 [190 P.2d 9]; *People* v. *Kelley, supra,* 66 Cal.2d 232, 239; *People* v. *Durham, supra,* 70 Cal.2d 171, 187-188; *People* v. *Haston,* 69 Cal.2d 233, 245 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Sam,* 71 Cal.2d 194, 204 [77 Cal.Rptr. 804, 454 P.2d 700]; *People* v. *Elder,* 274 Cal.App.2d 381, 394 [79 Cal.Rptr. 466].)

Although there are cases that seem to indicate that where the issue of fact is one of identity, i.e., whether or not the defendant rather than some other person was the perpetrator of the crime charged, evidence of other crimes is ordinarily admissible if it discloses a distinctive modus operandi common to both the other crimes and the charged crime (see *People* v. *Haston, supra,* 69 Cal.2d 233, 245; *People* v. *Sam, supra,* 71 Cal.2d 194, 204; *People* v. *Elder, supra,* 274 Cal.App.2d 381, 394), it is now firmly settled that admissibility of other crimes does not depend upon "mechanically automatic rules" or "certain categories" but upon a consideration of the "unique facts and issues of each case." (*People* v. *Schader, supra,* 71 Cal.2d 761, 774.) "The chief elements of probative value are relevance, materiality and necessity." (*People* v. *Schader, supra,* at p. 774.) With particular regard to the determination of relevance, ". . . the trial court must look behind the label describing the kind of similarity or relation between the other offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong." (*People* v. *Schader, supra,* at p. 775; see *People* v. *Elder, supra,* 274 Cal. App.2d at p. 395.)

## D. *Principles Applied*

The theory of the prosecution's case was that defendant entered the Kistler garage with the intent to commit theft. Defendant admitted that he was on the premises but his defense was that he had entered the Kistler premises looking for a friend who lived in a white house. He denied any felonious intent. His intent, therefore, was clearly an issue in the case as was his motive, knowledge of means necessary to commit a burglary, and modus operandi. Accordingly, in view of the defense offered by defendant, evidence of other offenses, related acts or circumstances relevant to show criminal intent, motive, knowledge, or modus operandi was admissible. (See *People* v. *David,* 12 Cal.2d 639, 647 [86 P.2d 811]; *People* v. *Kelley, supra,* 66 Cal.2d 232, 242-243; *People* v. *Honaker,* 205 Cal.App.2d 243, 244 [22 Cal.Rptr. 829] [disapproved on other grounds, 66 Cal.2d 244 (57 Cal.Rptr. 363, 424 P.2d 947)].)

■ We have no difficulty concluding that evidence of the incident occurring at Mrs. Scott's residence on September 15, 1971, was relevant to the issues alluded to above. There are precise elements of similarity between this incident and the one giving rise to the instant charge. In both instances the conduct of defendant showed a peculiar or characteristic behavioral pattern. Thus we have in both the parking of an orange Volkswagen in the driveway, the presence of a man on a residential premises, and his statement, when approached, that he was looking for a man he identified by name, and that when told that such a person did not reside there, he drove away. These are distinctive circumstances adding persuasive support to the inference that defendant entered the Kistler premises for the purpose of committing a theft or a felony and of a modus operandi indicating that when he was discovered on the premises he would give the explanation that he was looking for a friend.

Adverting to the November 10, 1970, incident, we find that the evidence discloses that on the afternoon of that day defendant was discovered to be in possession of property stolen as a result of two separate burglaries occurring in the morning of the same day. In ascertaining whether this evidence was admissible we do not think it determinative that defendant entered a plea of guilty to receiving stolen property and that it was not determined that he was guilty of burglary, or guilty at all. ■ Evidence of uncharged crimes and even of crimes of which a defendant was acquitted is admissible if the evidence meets the test of relevancy. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 638; *People* v. *Griffin,* 66 Cal.2d 459, 465 [58 Cal.Rptr. 107, 426 P.2d 507]; *People* v. *Jenkins,* 3 Cal.App.3d 529, 534 [83 Cal.Rptr. 525].) The relevant ultimate fact is not whether the person was charged and convicted but whether the evidence is of a fact material to the issue being tried. (See *People* v. *Jenkins, supra.*) The question is whether this evidence tends logically, naturally and by reasonable inference to establish the issues of intent, motive and knowledge hereinbefore alluded to and to overcome the matter offered by defendant in his defense.

■ The proffered evidence clearly showed that on the day in question someone entered two separate residential premises and that certain articles of personal property were stolen. In each of these entries a locked garage was broken into. In the instant incident defendant was discovered in the back of the Kistler garage. Defendant was found in possession of these articles of stolen property soon after they were stolen. Defendant's possession of the stolen property was a material fact (*People* v. *Citrino,* 46 Cal.2d 284, 288 [294 P.2d 32]); and possession of recently stolen property is so incriminating as to warrant convictions where there is slight

corroboration in the form of statements or conduct of the defendant tending to show his guilt. (*People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Citrino, supra,* at pp. 288-289.) "Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence. . . ." (*People* v. *McFarland, supra,* at p. 755.)

In the present case there is evidence from which it may be concluded that defendant gave a false explanation regarding his possession. He stated to Officer Tannehill that the box contained a projector belonging to his wife and that he was attempting to sell it at a pawnshop. Tannehill testified that during further conversation he "changed his story" with respect to the ownership and possession of the property in the car.[1] When Tannehill approached the vehicle defendant placed a leather jacket over an object on the front seat and his feet on a box on the floor. Tannehill testified that it appeared to him that defendant was attempting to conceal something. Such conduct affords an inference of a suspicious circumstance indicating a consciousness of guilt and would serve as slight corroboration warranting a conviction.

The evidence with respect to defendant's involvement in the November 10, 1970, incident and his testimony that he entered a plea of guilty to receiving stolen property indicated a relationship with criminal activity involving stolen property relevant to the question of his continued criminal intentions and served to rebut the defense that defendant entered the premises involved in the instant charge by mistake. (See *People* v. *Sizelove,* 134 Cal.App.2d 104, 107-108 [285 P.2d 4].) In sum, the evidence tended to establish criminal intent, guilty knowledge, motive, a common plan or scheme. (See *People* v. *Gregor,* 141 Cal.App.2d 711, 717-718 [297 P.2d 734].)

We therefore hold that the probative value of the two prior incidents was sufficient to outweigh the prejudicial effect of the evidence and that, therefore, the admission of such evidence was proper, provided it was not inadmissible under some other exclusionary rule.

---

[1]The record does not disclose in what particulars defendant "changed his story."

## Identification Testimony

■ With respect to the prior incident of September 15, 1971, defendant contends that the trial court committed prejudicial error by allowing identification testimony of Mrs. Scott to be heard by the jury without first affording defense counsel an opportunity to show, out of the jury's presence, that her identification of defendant was the result of unnecessarily suggestive pretrial photographic procedures. It is urged that such error rendered inadmissible the evidence of said incident.

Several Court of Appeal cases have held that where the defense objects to an in-court identification not yet made on the basis that it is the result of an impermissible pretrial photographic procedure, the trial court should take evidence, out of the presence of the jury, to determine whether such evidence was so unfair as to taint the in-court identification. (See *People* v. *Douglas*, 259 Cal.App.2d 694, 698 [66 Cal.Rptr. 492]; *People* v. *Neal*, 271 Cal.App.2d 826, 832 [77 Cal.Rptr. 65] [cert. den. 396 U.S. 946 (24 L.Ed.2d 249, 90 S.Ct. 387)]; *People* v. *Rodriguez*, 10 Cal.App.3d 18, 30 [88 Cal.Rptr. 789]; *People* v. *Citrino*, 11 Cal.App.3d 778, 782-783 [90 Cal.Rptr. 80]; and see *People* v. *George*, 23 Cal.App.3d 767, 772-774 [100 Cal.Rptr. 427].)

In light of the holdings in these cases it was error for the trial court not to have conducted the extrajury procedure. However, such error was not prejudicial. The ultimate question in each instance is whether under the totality of the circumstances a defendant was deprived of due process because of an improper pretrial identification. (*Neil* v. *Biggers*, 409 U S. 188, 195, 199 [34 L.Ed.2d 401, 409, 411, 93 S.Ct. 375].) A violation of due process occurs only when the pretrial procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Neil* v. *Biggers, supra*, at pp. 198-200 [34 L.Ed.2d at pp. 410-412]; *Stovall* v. *Denno*, 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *Simmons* v. *United States*, 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *People* v. *Lawrence*, 4 Cal.3d 273, 280 [93 Cal.Rptr. 204, 481 P.2d 212] [cert. den. 407 U.S. 909 (32 L.Ed.2d 682, 92 S.Ct. 2431)].)

In the instant case we find no substantial likelihood of misidentification. At the time of her in-court identification of defendant Mrs. Scott testified that when she was shown the photographs two weeks after the incident she told the officers that the photographs were "deceiving," that she "couldn't be positive," and that she picked out one photograph as possibly being that of the man in question. At the trial she testified that defendant

reminded her "100 percent" of the man she saw at her home. No claim was made by defense counsel that the in-court identification was tainted by the pretrial procedures, nor is such a claim made on this appeal. Under the circumstances we conclude that the error in not conducting a hearing out of the presence of the jury to determine whether the pretrial procedure was so unfair as to taint the in-court identification was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

## Illegal Detention and Search

Defendant contends that the evidence relating to the November 10, 1970, incident was the direct result of an illegal detention and search and should, therefore, have been excluded. The People assert that this contention is not cognizable on this appeal because defendant did not move, pursuant to Penal Code section 1538.5, to suppress the evidence of stolen property and to appeal any denial of that motion notwithstanding his plea of guilty in the criminal proceeding in which he was found guilty of receiving stolen property. The People urge that had defendant availed himself of that right, the resulting decision would have been the law of this case, and that, accordingly, his failure to pursue the available remedies in the prior proceeding constitutes a waiver which thereafter rendered his conviction invulnerable to attack on Fourth Amendment grounds.

Defendant concedes that he is not attacking the validity of his misdemeanor conviction for receiving stolen property since said conviction is now final, but nevertheless asserts that he is entitled to challenge the evidence of the circumstances leading to his arrest in that case on Fourth Amendment grounds when such evidence was proffered in the instant case to prove defendant's intent, motive, knowledge and scheme or plan.

The procedure for the suppression of evidence obtained as a result of a search or seizure alleged to be unreasonable under constitutional or other enumerated standards is provided for in Penal Code section 1538.5. (See *People* v. *Superior Court,* 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230]; *Kirby* v. *Superior Court,* 8 Cal.App.3d 591, 596-597 [87 Cal. Rptr. 577].) In the instant case the record does not disclose whether defendant challenged the validity of the search and seizure in the prior criminal case wherein he entered a plea of guilty to receiving stolen property. Of course, if he did, and the matter was *finally* determined therein on the merits defendant would be collaterally estopped from relitigating the issue. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 606 [26 Cal.Rptr. 559, 375 P.2d 439]; *People* v. *Beltran,* 94 Cal.

App.2d 197, 203 [210 P.2d 238]; *People* v. *Majado*, 22 Cal.App.2d 323, 326 [70 P.2d 1015]; see *Sealfon* v. *United States*, 332 U.S. 575, 578 [92 L.Ed.2d 180, 183-184, 68 S.Ct. 237]; and see *People* v. *Medina*, 6 Cal.3d 484, 492 [99 Cal.Rptr. 630, 492 P.2d 686].)

On this appeal the parties have, however, predicated their arguments on the basis that the issue of the validity of the subject search and seizure has not previously been litigated.[2] We observe that defendant, not having raised the issue in the pretrial forum of the prior criminal action, namely, the special hearing pursuant to Penal Code section 1538.5, could not have challenged the validity of the search and seizure upon an appeal from his conviction therein. ■ We are persuaded, upon analogy and a recognition of the place and scope of the procedure provided for in section 1538.5, that defendant's failure to raise the issue in such pretrial forum has resulted in a waiver of his right to thereafter challenge the validity of the subject search and seizure. We find support for this conclusion in the language of section 1538.5 and the purpose of the statute, namely, to provide a speedy remedy in a readily accessible court, including an adversary hearing, wherein to review a search and seizure issue to save the inconvenience and expense of determining the issue at trial. (*Hewitt* v. *Superior Court*, 5 Cal. App.3d 923, 927-928 [85 Cal.Rptr. 493]; *People* v. *de Renzy*, 275 Cal. App.2d 380, 387 [79 Cal.Rptr. 777].)

We particularly note the language of subdivision (h) of Penal Code section 1538.5 which specifically provides that "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice or superior court." In the present case it is apparent that defendant had an opportunity for the motion in the receiving stolen property case and that he was then aware of the grounds for the motion.

In any event, we are satisfied that since defendant's conviction on the charge of receiving stolen property upon his plea of guilty was final, evidence of his conviction on the charge, irrespective of the underlying evidentiary circumstances, was admissible of the fact that he was convicted of the crime. Evidence of such conviction, would, for reasons hereinbefore indicated, be admissible upon the issue of intent in the present case. ■ A voluntary plea of guilty is the equivalent of a conviction of the

---

[2] The People state in their brief that defendant did not challenge the illegality of the subject detention and search until the instant trial and until the prosecutor made defendant aware that evidence of the November 10, 1970, incident would be presented as relevant to the instant charge.

crime and includes an admission of every element of the crime. (*In re Williams*, 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *Ward*, 66 Cal.2d 571, 575 [58 Cal.Rptr. 313, 426 P.2d 881]; *People* v. *Herrera*, 255 Cal.App.2d 469, 471 [63 Cal.Rptr. 96]; *People* v. *Gannaro*, 216 Cal.App.2d 25, 29 [30 Cal.Rptr. 711].) ■ In this connection we particularly note that illegally obtained evidence does not suffice to set aside a conviction based upon a guilty plea unless it be shown that the illegally obtained evidence induced the plea of guilty in order to render it involuntary. (*French* v. *United States*, 416 F.2d 1149, 1153; *People* v. *Gannaro, supra.*)

### Order of Proof

■ Defendant also asserts that prejudicial error was committed when the trial court permitted evidence of the alleged similar offenses prior to receiving evidence of the substantive burglary charge. Although the preferred offer of proof in similar situations is to first present evidence of the substantive charge (see *People* v. *Albertson, supra*, 23 Cal.2d 550, 578), this preference is not inflexible in view of the wide discretion given the trial judge to determine the order of proof. (Evid. Code, § 320; Pen. Code, §§ 1093, 1094; see *People* v. *Sica*, 112 Cal.App.2d 574, 584 [247 P.2d 72]; *People* v. *Griffin*, 98 Cal.App.2d 1, 47 [219 P.2d 519] [overruled on other grounds, *People* v. *Weiss*, 50 Cal.2d 535, 566 (327 P.2d 527)].) In any event, there is no showing that the order of proof affected the outcome of the trial. It is not probable, therefore, that there would have been a different result if the preferred offer of proof had been followed. Accordingly, if there was error, it would be harmless error. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

### Alleged Misconduct of Prosecutor

■ Defendant contends that evidence of his prior offenses varied substantially from the offer of proof tendered by the prosecutor and relied upon by the trial judge. The district attorney represented that the person who burglarized the Jahnsen premises removed property from the garage. Jahnsen so testified, but there was evidence adduced at the trial that the police found stolen property that had been taken from the Jahnsen residence at the same time that articles had been taken from the garage. The prosecutor also represented in his offer of proof that the Waller garage was unlocked at the time of the burglary, but failed to prove this circumstance at the trial. These variances are not substantial nor has it been established that they were part of a deceptive scheme employed by the prosecution. Moreover, defendant concedes that the alleged misrepresenta-

tions were innocently made. Under these circumstances we perceive no error in the respects asserted. (See *People* v. *Beivelman,* 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913] [cert. den. 406 U.S. 971 (32 L.Ed.2d 671, 92 S.Ct. 2415)].)

## Instructions

Defendant predicates error in that portion of the instruction on "Evidence of Other Offenses" requested by the People which told the jury that "Evidence has been received tending to show that the defendant committed [a crime] [crimes] other than that for which he is on trial. . . ." He asserts that the court failed to inform the jury that defendant had not been arrested for or convicted of the November 10, 1970, burglaries and that no crime had been shown by the testimony of Mrs. Scott.

The subject instruction was clearly a correct statement of the law insofar as the November 10, 1970, incident is concerned since defendant was found guilty of receiving stolen property as a result of that incident. Accordingly, as limited to this offense the instruction was couched in proper language. Concerning the September 15, 1971, incident, there was no evidence that this constituted a crime nor did the prosecution make any claim or statement that it did. This incident constituted an "act" rather than a crime, and as we have pointed out above, evidence of this act was admissible under Evidence Code section 1101. The trial court should have included the word "act" in its instruction. However, since there was evidence before the jury that defendant had committed the crime of receiving stolen property and no representation was made to the jury that he had been convicted of any other crime, we do not perceive that the jury was confused or misled by the instruction. Accordingly, we find no error.

## Custody

Defendant complains of the trial court's action in remanding him into custody during the trial. The record discloses that in taking this action the court indicated it was doing so "in order to prevent trouble in the courtroom" and alluded to defendant's conduct on the previous day and during the preliminary examination.[3]

Penal Code section 1129 provides: "When a defendant who has given bail appears for trial, the court may, in its discretion, at any time after

---

[3]The trial court remarked: "[I]n view of the defendant's conduct yesterday afternoon in court and outside in the hall, it appears that he is somewhat reluctant to cooperate during the trial and I see in reading the transcript of the preliminary that you had the same kind of trouble with him."

his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide the judgment or further order of the court, and he must be committed and held in custody accordingly." This statute has been held to be constitutional and not violative of the right to bail (*People* v. *Williams,* 59 Cal. 674, 676; *People* v. *Dysart,* 39 Cal. App.2d 287, 289 [102 P.2d 1091]; *People* v. *Avery,* 64 Cal.App.2d 850, 856 [149 P.2d 758]), nor is any hearing or showing required to be made or notice given for the court to be able to exercise its discretion under the statute. (*People* v. *Fidelity & Deposit Co.,* 107 Cal.App. 160, 165 [290 P. 59].)

In the instant case the court apparently exercised its discretion because of defendant's uncooperative conduct. It seems that under the terms of the statute the trial court has broad discretion. (See *People* v. *Oringer,* 193 Cal.App.2d 19, 28 [14 Cal.Rptr. 95]; *People* v. *Cox,* 259 Cal.App.2d 653, 662 [66 Cal.Rptr. 576].) In any event, defendant has not made any showing that the conduct of his trial was prejudiced by his incarceration.

The judgment is affirmed.

Elkington, J., concurred.

A petition for a rehearing was denied September 26, 1973, and appellant's petition for a hearing by the Supreme Court was denied October 24, 1973.